1
BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
2
PATRICIA N. SYVERSON (CA SBN 203111)
MANFRED P. MUECKE (CA SBN 222893)
3
600 W. Broadway, Suite 900
San Diego, California 92101
4
psyverson@bffb.com
mmuecke@bffb.com
5
Telephone: (619) 798-4593

6
BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
7
ELAINE A. RYAN (*To Be Admitted Pro Hac Vice*)
CARRIE A. LALIBERTE (*To Be Admitted Pro Hac Vice*)
8
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
9
eryan@bffb.com
claliberte@bffb.com
10
Telephone: (602) 274-1100

11
## UNITED STATES DISTRICT COURT

12
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 13 DAVID BERKE, LORENZO COLUCCI, and VIENNA COLUCCI, on behalf of themselves and all others similarly situated,<br><br>15       Plaintiffs,<br><br>16<br>17   v.<br><br>18<br>19 WHOLE FOODS MARKET, INC., WHOLE FOODS MARKET CALIFORNIA, INC., WHOLE FOODS MARKET DISTRIBUTION, INC., WHOLE FOODS MARKET SERVICES, INC., WHOLE FOODS MARKET GROUP, INC., WFM PRIVATE LABEL, LP, and WHOLE FOODS MARKET PACIFIC NORTHWEST INC.,<br><br>24<br>25      Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1.  VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*;<br>2.  VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*;<br>3.  VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 Ill. Comp. Stat. 501/1, *et seq.*; and<br>4.  UNJUST ENRICHMENT<br><br>JURY TRIAL DEMANDED |

26

27

28

---

CLASS ACTION COMPLAINT

Plaintiffs David Berke, Lorenzo Colucci, and Vienna Colucci, on behalf of themselves and all others similarly situated, through their undersigned attorneys, allege this Class Action Complaint against Defendants Whole Foods Market, Inc., Whole Foods Market California, Inc., Whole Foods Market Distribution, Inc., Whole Foods Market Services, Inc., Whole Foods Market Group, Inc., WFM Private Label, LP, and Whole Foods Market Pacific Northwest, Inc. on actual knowledge as to their own acts, and on information and belief after due investigation as to all other allegations, as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This is a consumer class action against Whole Foods Market, Inc., and its operating subsidiaries (collectively, "Whole Foods"), a nationwide grocery chain which has promised consumers for decades that it sells only the highest quality, purest, and most wholesome foods available.  To attract health-conscious shoppers, Whole Foods boasts that it maintains "***the strictest quality standards in the industry***…"[1] Whole Foods also asserts that it adheres to ***"[s]tandards that aren't standard anywhere else.***"[2]  Its corporate slogan is: "America's Healthiest grocery Store".

2.      These representations are designed to convince consumers that, if they shop at Whole Foods, they are buying the safest and healthiest products in the nation.  But this is far from true as to Whole Foods' own brand of bottled water, "Starkey Water."  Touted as "Protected, Pure, Unique" and "Untouched by surface contamination",[3] Starkey Water – as Whole Foods has known for years – is heavily contaminated with arsenic, a metalloid chemical and known carcinogen that can lead to reproductive harm, circulatory and nervous system disorders, an increased risk of diabetes and hypertension, stomach pain and nausea, vomiting and diarrhea,

---

[1] https://www.wholefoodsmarket.com/company-info (emphasis added).
[2] https://www.wholefoodsmarket.com/quality-standards (emphasis added).
[3] https://idahopreferred.com/members/starkey-water-co/.

numbness, paralysis, blindness, and other health problems.[4]  Tests dating back to at least 2016 and, as recently as June 2019, consistently show Starkey Water has some of the highest arsenic levels of any bottled water presently being marketed in the United States, with some bottles exceeding the maximum arsenic contamination levels allowed by federal and state law.  In 2016 and 2017, Starkey Water was recalled due to arsenic contamination, and 2019 testing independently conducted by both *Consumer Reports* and the Center for Environmental Health confirmed that Starkey Water contains shockingly high levels of arsenic contamination.

3.     Plaintiffs are California and Illinois consumers who, within the Class Period alleged herein, purchased Starkey Water.  In so doing, Plaintiffs relied on Whole Foods' reputation and long-running multi-media campaign for sourcing and selling safe, wholesome, and healthy products.

4.     While Plaintiffs and other Starkey Water purchasers expect Starkey Water to surpass competitors in purity and safety, the truth is that out of 130 bottled water brands tested for arsenic by *Consumer Reports*, Starkey Water proved to have the highest arsenic content of the brands currently marketed: "The test results show that Whole Foods' bottled water still has levels of arsenic that approach or exceed the legal federal limit:  Three samples tested this month ranged from 9.48 to 9.86 ppb [parts per billion] of arsenic; a fourth registered 10.1 ppb, just above the federal limit of 10 ppb. The tested bottles of water were purchased in March [2019] at retail locations."[5]  These results were later independently tested and confirmed by the Center for Environmental Health.  By contrast, Chicago tap water contains no measurable arsenic.  And, over 120 competing bottled water brands contain no discernable arsenic, or very low levels.

---

[4]     https://www.medicalnewstoday.com/articles/241860.php;  *see also* https://www.nsf.org/q-and-a-all/q-and-a-all-consumer/consumer-resources.

[5]  "*Arsenic in Some Bottled Water Brands at Unsafe Levels, Consumer Reports Says.*",   https://www.consumerreports.org/water-quality/arsenic-in-some-bottled-water-brands-at-unsafe-levels/.

5.      This is hardly what Whole Foods shoppers bargained for.  Plaintiffs and other purchasers of Starkey Water paid a hefty premium – especially as compared to tap water – because they were and still are led to believe Starkey Water is the healthiest and least contaminated bottled water.  But instead, they are unwittingly buying the most arsenic-laden bottled water product currently on the market.

6.      Whole Foods works hard to impress upon consumers that Starkey Water is of the highest purity, starting with bottling it in glass or BPA-free PET plastic.  http://www.starkeywater.com/the-water.  Should consumers have any doubts, the Starkey Water "Product description" Whole Foods provides consumers reinforces its purity:

> Starkey Spring Water is a protected single-source water with a balance of naturally occurring minerals and gently alkaline pH. It comes from a geothermal source that rises up from the earth over 2 miles deep in the foothills of Council, Idaho. Carbon dating of this water places it at between 11,000 and 16,000 years old, **making it some of the purest and most pristine water available in the U.S.** Gushing forth from the earth at an impressive 132 degrees, our water is minimally processed, only passing through ultra violet light to keep it clean and pure. Starkey Spring Water is Deep Down Good.

https://www.amazon.com/Starkey-Spring-Water-Glass-1000/dp/B078ZM67ZR (emphasis added).  Whole Foods reassures buyers that: "Starkey Spring Water rises up through the earth from more than two miles deep where it's been ***pure filtered*** for more than 11,000 years."[6]  Its back label likewise asserts that: "its ***purity*** has been protected for 11,000 years."  Exhibit A, typical Starkey Water label (emphasis added).  And Whole Foods reassures consumers that it tests every production run of Starkey Water[7], and that "the fine reflective crystals" they may see when they hold "some of our glass bottles up to the light" are small amounts of the "beneficial

---

[6] http://www.starkeywater.com/the-water (emphasis added).
[7]      https://www.foxbusiness.com/features/bottled-water-sold-at-whole-foods-target-found-with-high-levels-of-arsenic-study-says.

1  minerals" silica/silicon.[8]  On a typical Starkey Water label, other than "pure" water,

2  the only additional contents identified are what Whole Foods characterizes as "small

3  amounts of beneficial minerals including Silica, Bicarbonate, Sodium and Sulfate."

4  *No mention is made* of arsenic:

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

 

20       (Front Label)                         (Back Label)

21         7.     The label fails to identify arsenic in its contents disclosure, and

22  consumers seeking to learn more would find a reference to the product's "purity."

23  As the FDA has noted in discouraging the use of the term "pure", "pure may be

24  confused with the term 'purified' and consumers may be misled into believing that

25  bottled water labeled as 'pure' has been treated to substantially decrease the total

26  dissolved solids content."  60 FR 57076, 57099.  If, as it claims, Whole Foods tests

27

28  [8] http://www.starkeywater.com/frequently-asked-questions.

every production run of Starkey Water, then it has known that the product has been universally contaminated with arsenic, with some bottles containing the industry's highest levels of arsenic for many years.  As early as 2016, the FDA found that Starkey Water contained arsenic exceeding federal limits, leading to a recall. Absent a recall, consumers cannot discern the presence of arsenic, as arsenic is not visible and cannot be tasted or smelled.[9]

8.     Despite knowing that Starkey Water contains a troubling amount of arsenic, Whole Foods has defiantly refused either to correct its marketing message, or change its production methods to ensure that Starkey Water does not contain any arsenic – let alone the highest arsenic levels of any bottled water brand.

9.     Plaintiffs and all members of the California, Illinois, and Multi-State Classes have been injured by Whole Foods' acts. Claims are asserted herein under California's Unfair Competition Law, Business and Professions Code §§ 17200 *et seq.*; the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/2 *et seq.;* and similar laws in the states comprising the Multi-State Class. Plaintiff Berke also brings claims for violations of the California Consumer Legal Remedies Act, Civil Code §§ 1750, *et seq.*, and all Plaintiffs bring claims for unjust enrichment.  In addition to restitution, damages (including punitive damages), and other compensatory relief, Plaintiffs seek appropriate injunctive relief against Whole Foods to halt its false and misleading "purity" representations and require corrective disclosures regarding Starkey Waters' arsenic content.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d), enacted pursuant to the Class Action Fairness Act ("CAFA").  Plaintiffs have alleged California, Illinois, and Multi-State Classes and

---

[9] https://www.nytimes.com/2019/06/24/health/bottled-water-arsenic.html.

as such the citizenship of at least one Class member is different from that of the Defendants.

11. Defendant Whole Foods Market, Inc. ("WFMI") is a Texas corporation, headquartered and operating in Austin, Texas. WMFI manufactures and/or causes the manufacture of various products, labels these products under its own name, and markets and distributes the products nationwide through its corporate parent's online website (amazon.com) and through its retail stores located throughout the United States.  As WFMI stated in federal court filings in 2008, it "currently operates more than 260 stores in the U.S., in 37 states and in the District of Columbia, and has more than 50,000 employees." *Whole Foods Market, Inc. v. Federal Trade Commission* (D.D.C., filed Dec. 8, 2008), Case No. 1:08-cv-02121, Complaint for Declaratory and Injunctive Relief, ECF 1 at 4. Today, ten years later, that number has grown to 436 U.S. stores, including 85 stores in the State of California. 2016 Whole Foods Annual Report at 14.  Since its acquisition by Amazon.com, WFMI has also caused the sale of its private label products nationwide, including to consumers in California and Illinois, through the website of its parent corporation, www.amazon.com.

12. Defendant Whole Foods Market California, Inc. ("WFM California") is a California corporation and operates the Whole Foods retail stores in California.

13. Defendant Whole Foods Market Distribution, Inc. ("WFM Distribution") is a Delaware corporation that distributes or causes the distribution of all WF's private label products throughout the United States, including and specifically to retail stores in the State of California.  WFM Distribution is 100% owned and controlled by WFMI.

14. Defendant Whole Foods Market Services, Inc. ("WFM Services") controls decisions relating to the nation-wide design, development, advertising, and marketing of Whole Foods private label lines of products.  WFM Services designs, develops, advertises, and markets Whole Foods private label products to be sold in

California.   WFM Services accomplishes the national design, development, advertising, and marketing of its private label lines of products through, *inter alia*, its assets and employees based in the State of California.   WFM Services owns and operates Whole Foods' website, which is used to market and consummate online sales of its products to consumers in California and throughout the nation. *See, e.g.*, https://www.wholefoodsmarket.com/privacy-policy (last visited Aug. 22, 2019), *and* https://www.wholefoodsmarket.com/terms-use (last visited Aug. 22, 2019).

15.   Defendant Whole Foods Market Group, Inc. ("WFM Group") is a wholly-owned subsidiary of WFMI and is incorporated in Delaware.   WFM Group operates the Whole Foods retail stores in CT, ME, MA, NH, RI, KY, MD, NJ, PA, OH, VA, DC, NY, AL, GA, MS, NC, SC, TN, IL, IN, IA, MI, MN, MO, NE, FA, and WI.  WFM Group is 100% owned and controlled by WFMI.

16.   Defendant WFM Private Label, L.P. ("WFM Private Label") is a Delaware corporation, doing business in the State of California and throughout the United States of America. WFM Private Label is a wholly owned subsidiary of Whole Foods Market, Inc. and an affiliate of Whole Foods Market California, Inc.

17.   Defendant Whole Foods Market Pacific Northwest, Inc. is a Delaware corporation, doing business in the State of Washington.

18.   The amount in controversy exceeds the sum of $5,000,000.   The minimal diversity required under the CAFA is satisfied.

19.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff Berke and many Class members are citizens of this District.   Moreover, Whole Foods regularly transacts and continues to transact business in this District.

20.   This Court has *in personam* jurisdiction over the Defendants because, *inter alia,* each Defendant: (a) transacted business in this District; (b) maintained continuous and systematic contacts in this District prior to and during the Class Period; and (c) purposefully availed itself of the benefits of doing business in this

District.   Accordingly, Defendants maintain minimum contacts with this District sufficient to subject them to service of process and due process of law requirements.

## PARTIES

21.   Plaintiff Berke is a citizen of California.  Mr. Berke purchased Starkey Water during the Class Period (as defined below).  In purchasing Starkey Water, Mr. Berke relied on Whole Foods' reputation and long-running multi-media campaign for sourcing and selling safe, wholesome, and healthy products.  He was deceived by Whole Foods in that he was led to believe and did believe that he was obtaining bottled water of the highest quality, safety, and purity.  Had he known the water contained arsenic in much higher amounts than other commercially available brands, he would not have purchased it.  He suffered an ascertainable loss and monetary damages as a result of Whole Foods' unlawful conduct alleged herein. Plaintiff Berke will purchase bottled water in the future, and he would purchase Starkey Water if it were possible to determine prior to purchase that the water contained only the identified beneficial minerals and no arsenic.  Plaintiff Berke regularly shops at Whole Foods, where Starkey Water is sold, but has been unable to determine whether it continues to contain arsenic.

22.   Plaintiff Lorenzo Colucci is a citizen of Illinois. Mr. Colucci purchased Starkey Water during the Class Period (as defined below).  In purchasing Starkey Water, Mr. Colucci relied on Whole Foods' reputation and long-running multi-media campaign for sourcing and selling safe, wholesome, and healthy products. He was deceived by Whole Foods in that he was led to believe and did believe that he was obtaining water of the highest quality, safety, and purity.  Mr. Colucci is a stage 4 cancer survivor who is keenly aware of the dangers of carcinogens, and shops carefully to avoid products that contain them.  Had he known the water contained arsenic in much higher amounts than other commercially available brands, he would not have purchased it.  He suffered an ascertainable loss and monetary damages as a result of Whole Foods' unlawful conduct alleged herein.

Plaintiff Lorenzo Colucci will purchase bottled water in the future, and he would purchase Starkey Water if it were possible to determine prior to purchase that the water contained only the identified beneficial minerals and no arsenic. Plaintiff Lorenzo Colucci regularly shops at Whole Foods, where Starkey Water is sold, but has been unable to determine whether it continues to contain arsenic.

23. Plaintiff Viana Colucci is a citizen of Illinois. Ms. Colucci purchased Starkey Water during the Class Period (as defined below). In purchasing Starkey Water, Ms. Colucci relied on Whole Foods' reputation and long-running multi-media campaign for sourcing and selling safe, wholesome, and healthy products. She was deceived by Whole Foods in that she was led to believe and did believe that she was obtaining water of the highest quality, safety, and purity. Ms. Colucci, like her brother, plaintiff Lorenzo Colucci, is keenly aware of the dangers of carcinogens. Had she known the water contained arsenic in much higher amounts than other commercially available brands, she would not have purchased it. She suffered an ascertainable loss and monetary damages as a result of Whole Foods' unlawful conduct alleged herein. Plaintiff Vienna Colucci will purchase bottled water in the future, and she would purchase Starkey Water if it were possible to determine prior to purchase that the water contained only the identified beneficial minerals and no arsenic. Indeed, Plaintiff Vienna Colucci regularly gets her groceries from Whole Food, where Starkey Water is sold, but has been unable to determine whether it continues to contain arsenic.

24. Defendant Whole Foods are for-profit corporations formed and existing as alleged in paragraphs 11-17, above.

## FACTUAL ALLEGATIONS

25. The demand for bottled water continues to grow in the United States largely because manufacturers promote their product as free of contaminants commonly found in the public water supply. This resonates with health-conscious consumers, particularly in the wake of the Flint, Michigan highly publicized water

scandal and, more recently, the Newark, New Jersey lead filter failure.  When Whole Foods introduced Starkey bottled water at a 2015 investor event, company executives heralded the product's purity and healthfulness.  "It naturally flows out of the ground," chief operating officer A.C. Gallo said about the company's spring in Council, Idaho, according to a published transcript on its website. "We built, actually, a spring house over it so we can let the water go down to the bottling plant. ***It's amazingly pristine water."*** [Emphasis added].

26.    Trade organizations like the International Bottled Water Association also work hard to reinforce in the public mind that bottled water is a safe alternative to public water by informing consumers that:

> Once the water enters the bottled water plant several processes are employed to ensure that it meets the U.S. Food and Drug Administration (FDA) purified water standard. ***These treatments can include utilizing a multi-barrier approach. Measures in a multi-barrier approach may include one or more of the following: reverse osmosis, distillation, micro-filtration, carbon filtration, ozonation, and ultraviolet (UV) light.  The finished water product is then placed in a sealed bottle under sanitary conditions and sold to the consumer.*** Moreover, the water from public water systems is often compromised after emergency situations or natural disasters (e.g., hurricanes, floods, tornados, fires, or boil alerts). During these times, bottled water is a necessary and reliable alternative to deliver clean, safe drinking water.[10]

27.  Whole Foods has indoctrinated consumers, including Plaintiffs, through decades of multi-media advertising that it only offers the highest quality, safest, and most nutritious products to its customers.  Indeed, Whole Foods makes it known that it bans from its stores products with ingredients that do not meet its stringent quality standards.            (https://assets.wholefoodsmarket.com/www/products/quality-standards/Unacceptable_Ingredients_for_Food_031519.pdf).   Because of its high quality standards, Whole Foods prices its products, including Starkey Water, at a premium earning it the moniker "Whole Paycheck".   And because consumers

---

[10] *Bottled Water Vs. Tap Water,* International Bottled Water Association, available at:         https://www.bottledwater.org/health/bottled-water-vs-tap-water   (emphasis added).

believe Starkey Water, and all Whole Foods products, are healthy and free of harmful contaminants, they are willing to pay a premium for it.

28.    Specifically, Whole Foods represents that:

(a)    Its "Quality Standards" reflect **"Standards that aren't standard anywhere else"**; [11]

(b)    That it maintains "**the strictest quality standards in the industry**…"[12]

(b)    Whole Foods' "team members" make sure to "carefully vet our products to make sure they meet our high standards by researching ingredients, reading labels and auditing sourcing practices…";[13]

(c)    Under a heading "Our Purpose", Whole Foods states "We're a purpose-driven company that aims to set the standards of excellence for food retailers. Quality is a state of mind at Whole Foods Market.";[14]

(d)    Thus, "We Sell **The Highest Quality** Natural and Organic Foods";[15]

(e)    As to Starkey Water, consistent with Whole Foods' marketing message, its back label assures that its "purity has been protected for 11,000 years", it "gushes forth…**with beneficial minerals**…" (Exhibit A), and Whole Foods further represents that Starkey Water "pass[es] through ultraviolet light to keep it clean and pure" "making it some of the purest and most pristine water available in the U.S."  https://www.amazon.com/Starkey-Spring-Water-Glass-1000/dp/B078ZM67ZR.

29.    But in 2016 an FDA spot check found arsenic levels in Starkey Water far above federal limits, sparking a recall.  Since then, Starkey Water has come close to the line of illegality, or has crossed that line as to a significant number of bottles,

---

[11] https://www.wholefoodsmarket.com/quality-standards.
[12] https://www.wholefoodsmarket.com/company-info.
[13] *Id.*
[14] *Id.*

according to tests run by *Consumer Reports* in or about April 2019 (3 samples of Starkey Water purchased in March 2019 ranged from 9.48 to 9.86 ppb of arsenic; a fourth registered 10.1 ppb, just above the federal limit of 10 ppb), and the Center for Environmental Health in or about June 2019 (finding arsenic levels requiring a health warning under Proposition 65).

30.    Regardless of whether buyers of Starkey Water are ingesting legal or illegal arsenic levels, the fact that they are ingesting any amount of arsenic means the water never meets the quality and safety standards Whole Foods has indoctrinated consumers to expect. Nor is Starkey Water the "highest quality" water subject to "the strictest quality standards in the industry". By claiming to "set the standards of excellence for food retailers," to "carefully vet our products to make sure that they meet our high standards by researching ingredients", and, by banning products with ingredients that do not meet its stringent quality standards, Whole Foods "highest quality" assurance is far from puffery – it is a demonstrably false and misleading statement of fact. When *Consumer Reports* independently tested 130 brands of bottled water, only 11 brands had detectable levels of arsenic with Starkey Water testing second highest. "*Arsenic in Some Bottled Water Brands at Unsafe Levels, Consumer Reports Says.*"[16] The brand that came in highest has been recalled from the market in the wake of these revelations.

31.    Further, Whole Foods' failure to disclose arsenic among the identified contents on the label is a material misleading omission. Arsenic is a poison that in large doses kills and in small doses can cause cancer and a number of other serious health problems, which is why it is filtered out so thoroughly that it does not appear in discernible levels in tap water, or in water marketed by Whole Foods' competitors. For example, arsenic has been shown to:

---

[15]  https://www.wholefoodsmarket.com/mission-values/core-values
[16]  Available at: https://www.consumerreports.org/water-quality/arsenic-in-some-bottled-water-brands-at-unsafe-levels/.

(a)  **Damage the Heart:**  CNN reported on May 7, 2019: "Young adults free of diabetes and cardiovascular disease developed heart damage after only five years of exposure to low-to-moderate levels of arsenic commonly found in groundwater."  More recently, a study published in Circulation: Cardiovascular Imaging, an American Heart Association Journal found that "[l]ow-level arsenic exposure is associated with a disproportionate growth of the heart independent of hypertension and other traditional risk factors".  And, "[t]he higher the arsenic content in drinking water, the greater the damage to the heart."

(b)  **Cause Cancer:**  The International Agency for Research on Cancer (IARC), part of the World Health Organization (WHO), classifies arsenic and inorganic arsenic compounds as "carcinogenic to humans."  This is based on sufficient evidence in humans that these compounds can cause lung cancer, bladder cancer and skin cancer.

(c)  **Lead to Kidney Disease:**  Arsenic exposure can lead to chronic kidney disease and kidney fibrosis.  Numerous scientific studies have shown that arsenic exposure led to various forms of renal dysfunction.  Normally after an acute kidney injury, kidney cells regrow to recover the organ's function.  However, chronic exposure to toxicants, like arsenic, injures the kidneys repeatedly and leads to the development of chronic kidney disease, an irreversible condition for which there is no current treatment.  Worse still, chronic kidney disease is progressive and leads to kidney failure.

(d)  **Increase the Risk of Diabetes:**  Science Daily reported in 2018 that chronic exposure to arsenic interferes with insulin secretion in the pancreas, which may increase the risk of diabetes. It drew on research published in the American Journal of Physiology -- Regulatory, Integrative and Comparative Physiology.

32.     In addition to these and several other serious health consequences caused by arsenic ingestion, it can also induce stomach pain, vomiting, and diarrhea.

33.     Moreover, because "it is a carcinogen, there is no completely 'safe' level of arsenic" according to Erik Olson, a drinking water expert at the National Resources Defense Council.  This is particularly true as to children, who because of their smaller size and greater consumption of water relative to their size, are subject to adverse health effects at low levels of arsenic ingestion.

34.     For example, a 2014 study co-authored by Joseph Graziano, Ph.D., a professor of environmental health sciences at Columbia University's Mailman School of Public Health and professor of pharmacology at Columbia's medical school found that an arsenic level of 5 ppb or greater in a child's household water supply was associated with a 5- to 6-point reduction in IQ compared with those whose exposure to arsenic levels was below 5 ppb.

35.     Regular exposure to small amounts of arsenic can also harm adults. A 2017 study published in the journal Environmental Research found a relationship between exposure to arsenic levels starting around 2 ppb and prostate cancer among men in Iowa, prompting the authors to suggest that the 10 ppb arsenic limit may "not be protective for human health."

36.     And public health officials in New Hampshire, in explaining their pending proposal to lower the state's cutoff for arsenic in tap water, cited research that identified health problems that appear at levels below 10 ppb, including "lung, bladder and skin cancer; cardiovascular disease; adverse birth outcomes; illnesses in infants; and reduced IQ."

37.     Tellingly, the EPA sets its "maximum contaminant level goal" for arsenic in water—the level below which there is no known or expected risk to health—at zero.

38.     The ill-effects from arsenic are exacerbated because it has a half-life of 3 to 5 days.   Most consumers of bottled water consume at least 1 bottle of water per

1    day with many drinking more than 1 bottle of water each day, such that the

2    cumulative amount of arsenic in the body at any period of time from Starkey Water

3    likely exceeds the per bottle arsenic levels.

4          39.    Whole Foods claims it recently conducted its own tests on Starkey

5    Water and found the water to contain less than 10 ppb of arsenic. Less than 10 ppb

6    is not zero, which is what consumers expect as a result of Whole Foods' name and

7    multi-media campaign. Further, water tests can vary from bottle to bottle according

8    to National Resources Defense Council's Erik Olson. Case in point: Whole Foods'

9    2016 water quality report listed Starkey Water's average arsenic level at 9 ppb, but

10    records show on December 15 of that year, Whole Foods issued a recall after 11.7

11    ppb of arsenic was detected in a water sample by Florida regulators. Three weeks

12    later, a second recall was issued after 12 ppb of arsenic was detected in another

13    sample.

14          40.    Whole Foods could, but has chosen not to, use available treatment

15    processes to remove the arsenic from Starkey Water to ensure it meets the standards

16    that consumers have come to expect from Whole Foods' products and rely upon in

17    purchasing Starkey Water.

18          41.    Because Plaintiffs and Class members paid for the highest quality

19    bottled water free of contaminants and received water with a high amount of arsenic

20    poison in it (much higher than tap water and similar brands), they are entitled to a

21    full refund. But for Whole Foods' name and multi-media campaign representing it

22    only sells products of the highest quality, safety, and purity; and failure to identify

23    arsenic in the listed contents, Plaintiff and Class members would not have purchased

24    Starkey Water as they had many other arsenic-free bottled water options available to

25    them. They certainly would not have paid a premium price for it, particularly

26    because most tap water contains less arsenic than Starkey Water and most other

27    arsenic-free bottled water is materially less expensive.

28

42.     For the foregoing reasons, Plaintiffs bring this class action for full restitution, actual and punitive damages, declaratory and injunctive relief, and corrective advertising.

## **CLASS ACTION ALLEGATIONS**

43.     Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Class:

### **Multi-State Class**

All consumers who, within the applicable statute of limitations period until the date notice is disseminated, purchased Starkey Water at Whole Foods in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington.[17]

Excluded from this Class are Defendants and their officers, directors, employees, and those who purchased Starkey Water for the purpose of resale.

44.     In the alternative to a Multi-State Class, Plaintiff Berke seeks certification of the following California-Only Class:

### **California-Only Class**

All California consumers who, within the applicable statute of limitations period until the date notice is disseminated, purchased Starkey Water at Whole Foods.

Excluded from this Class are Defendants and their officers, directors, employees, and those who purchased Starkey Water for the purpose of resale.

45.     In the alternative to a Multi-State Class, Plaintiffs Lorenzo Colucci and Vienna Colucci seek certification of the following Illinois-Only Class:

---

[17] The States in the Multi-State Class are limited to those States with similar consumer fraud laws as applied to the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 502/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq.*); Missouri (Mo. Rev. Stat. 010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code §19.86.010, *et seq.*). These statutes are referred to as "Similar Consumer Fraud Statutes."

**Illinois-Only Class**

All Illinois consumers who, within the applicable statute of limitations period until the date notice is disseminated, purchased Starkey Water at Whole Foods.

Excluded from this Class are Defendants and their officers, directors, employees, and those who purchased Starkey Water for the purpose of resale.

46.    **Numerosity.**  The members of the Classes are so numerous that joinder of all members is impracticable.   Plaintiffs are informed and believe that the proposed Classes contain thousands of purchasers of Starkey Water who have been damaged by Defendants' conduct as alleged herein.   The precise number of Class members is unknown to Plaintiffs.

47.    **Existence and Predominance of Common Questions of Law and Fact.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.   These common legal and factual questions include, but are not limited to, the following:

            a.      Whether Whole Foods' alleged conduct is unlawful or unfair;

            b.      Whether the alleged conduct constitutes violations of the laws asserted;

            c.      Whether Whole Foods engaged in misleading and/or deceptive advertising; and

            d.      Whether Plaintiffs and Class members are entitled to appropriate remedies, including restitution, damages, corrective advertising, and injunctive relief.

48.    **Typicality.** Plaintiffs' claims are typical of the Class members' claims because, *inter alia*, all Class members were injured through the uniform misconduct described above.   Plaintiffs are also advancing the same claims and legal theories on behalf of themselves and all Class members.

49.    **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of Class members.   Plaintiffs have retained counsel experienced

in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no adverse or antagonistic interests to those of the Classes.

50.     **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Whole Foods.  It would thus be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

51.     Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Classes, on grounds generally applicable to the entire Classes, to enjoin and prevent Whole Foods from engaging in the acts described and requiring Whole Foods to provide full restitution to Plaintiffs and Class members.

52.     Unless a Class is certified, Whole Foods will retain monies received as a result of their misconduct that were taken from Plaintiffs and Class members.

53.     Unless an injunction is issued, Whole Foods will continue to commit the violations alleged, and the members of the Classes and the general public will continue to be deceived.

**COUNT I**
**Violation of California Business & Professions Code §§ 17200, *et seq.***
**and Similar Consumer Fraud Statutes, supra note 17**
**(On Behalf of the Multi-State or California-Only Class)**

54.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

55.     Plaintiffs bring this claim individually and on behalf of the Multi-State or California-Only Classes.

56.     As alleged herein, Plaintiffs have suffered injury in fact and lost money or property at the time of purchase as a result of Whole Foods' conduct because they purchased Starkey Water in reliance on Whole Foods' reputation and multi-media campaign regarding the quality, safety, and purity of its products and material non-disclosure of arsenic in Starkey Water.  Had Whole Foods disclosed on the bottles that Starkey Water contained or may contain arsenic in high and commercially unusual levels, Plaintiffs would have seen and read that disclosure and would not have purchased Starkey Water.

57.     The Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.* ("UCL") prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.  The Similar Consumer Fraud Statutes likewise prohibit the use of unfair or deceptive practices in the course of trade or commerce, and are to be liberally construed.

58.     **Unlawful Business Practices:** In the course of conducting business, Whole Foods committed "unlawful" business practices in violation of the UCL by, *inter alia*, leading consumers, including Plaintiffs, to believe that it only sells products of the highest quality, safety, and purity, which are false, misleading, and/or deceptive representations and misleading half-truths; and making the material arsenic omission (both of which constitute advertising within the meaning of § 17200), and violating California Civil Code §§ 1572, 1573, 1709, and 1711; the California Legal Remedies Act, California Civil Code §§ 1750, *et seq.*; California

Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*, the Similar Consumer Fraud Statutes, and the common law.

59.     Plaintiffs reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

60.     **Unfair Business Practices:** In the course of conducting business, Whole Foods committed "unfair" business acts or practices by, *inter alia*, leading consumers, including Plaintiffs, to believe that it only sells products of the highest quality, safety, and purity, which are false, misleading, and/or deceptive representations and misleading half-truths; and making the material arsenic omission (both of which constitute advertising within the meaning of § 17200). There is no societal benefit from false advertising, only harm. While Plaintiffs and the public at large were and continue to be harmed, Whole Foods has been unjustly enriched by its false, misleading, and/or deceptive representations and material omissions as it unfairly enticed Plaintiffs and Class members to purchase Starkey Water.  Because the utility of Whole Foods' conduct (zero) is outweighed by the gravity of harm to Plaintiffs, consumers, and the competitive market, Whole Foods' conduct is "unfair" having offended an established public policy.

61.     Whole Foods also engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to the public at large.

62.     There were reasonably available alternatives to further Whole Foods' legitimate business interests, other than the conduct described herein.

63.     **Fraudulent Business Practices:** In the course of conducting business, Whole Foods committed "fraudulent business act[s] or practices" and deceptive or misleading advertising by, *inter alia*, leading consumers, including Plaintiffs, to believe that it only sells products of the highest quality, safety, and purity, which are false, misleading, and/or deceptive representations and misleading half-truths; and making the material arsenic omission (both of which constitute advertising within

the meaning of § 17200).

64.     Whole Foods' actions, claims, and misleading statements, as more fully set forth above, are misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, *et seq*.

65.     Plaintiffs relied on Whole Foods' reputation and long-running multi-media campaign for sourcing and selling safe, wholesome, and healthy products, and were in fact injured as a result of those false, misleading, and deceptive representations and misleading half-truths and material omissions.

66.     Unless restrained and enjoined, Whole Foods will continue to engage in the above described conduct. Accordingly, injunctive relief is appropriate.

67.     Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, seek declaratory relief and an injunction prohibiting Whole Foods from continuing such practices, corrective advertising, restitution of all money obtained from Plaintiffs and the members of the Classes collected as a result of unfair competition, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

**COUNT II**
**Violations of the Consumers Legal Remedies Act –**
**Cal. Civ. Code §§ 1750 *et seq.***
**(On Behalf of the California-Only Class)**

68.     Plaintiff Berke repeats and incorporates by reference the allegations contained in the paragraphs 1 through 53 above as if fully set forth herein.

69.     Plaintiff Berke brings this claim individually and on behalf of the California-Only Class.

70.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*. (the "CLRA").

71.     Plaintiff Berke is a consumer as defined by California Civil Code § 1761(d). Starkey Water is a "good" within the meaning of the CLRA.

72.     Whole Foods violated and continues to violate the CLRA by engaging

in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff Berke and the California-Only Class which were intended to result in, and did result in, the sale of Starkey Water:

(5)    Representing that [Starkey Water has] . . . characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .

*      *      *

(7)    Representing that [Starkey Water is] of a particular standard, quality, or grade … if [it is] of another.

73.    Pursuant to California Civil Code § 1782(d), Plaintiff Berke and the California-Only Class seek a Court Order declaring Whole Foods to be in violation of the CLRA, enjoining the above-described wrongful acts and practices of Defendant, and ordering restitution and disgorgement.

74.    Pursuant to § 1782 of the CLRA, Plaintiff Berke notified Whole Foods in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that Whole Foods rectify the problems associated with the actions detailed above and give notice to all affected consumers of Whole Foods' intent to so act.  A copy of the letter is attached hereto as Exhibit B.

75.    If Whole Foods fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the CLRA, Plaintiff Berke will amend this Complaint to add claims for actual, punitive, and statutory damages as appropriate.

76.    Pursuant to § 1780 (d) of the CLRA, attached hereto as Exhibit C is the affidavit showing that this action has been commenced in the proper forum.

///

///

///

**COUNT III**
**Violations of the Illinois Consumer Fraud**
**and Deceptive Business Practices Act, -**
**815 Ill. Comp. Stat. 501/1, *et seq.***
**(On Behalf of the Illinois-Only Class)**

77.     Plaintiffs Lorenzo and Vienna Colucci repeat and incorporate by reference the allegations contained in the paragraphs 1 through 53 above as if fully set forth herein.

78.     Plaintiffs Lorenzo and Vienna Colucci bring this claim individually and on behalf of the Illinois-Only Class.

79.     The conduct described in this Complaint constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, et seq. ("ICFA").

80.     Whole Foods engaged in a deceptive acts or practices in violation of Section 2 of ICFA by representing to Plaintiffs and Class members through advertising and otherwise that Whole Foods products are of a quality and safety level found nowhere else, and that Starkey Water contains only the "beneficial minerals" referenced on the Starkey Water label.

81.     Whole Foods engaged in unfair practices in violation of Section 2 of ICFA by representing to Plaintiffs and Class members through advertising and otherwise that Whole Foods products are of a quality and safety level found nowhere else, and that Starkey Water contains only the "beneficial minerals" referenced on the Starkey Water label.

82.     Whole Foods intended for Plaintiffs Lorenzo and Vienna Colucci and Illinois-Only Class members to rely on and accept as true these advertisements and representations and the material arsenic omission in deciding whether to purchase Starkey Water.

83.     Whole Foods' misrepresentations and material omission were likely to deceive Plaintiffs and Illinois consumers, or were unfair to them.

84. Whole Foods' false and/or unfair claims and other unfair and deceptive conduct was likely to cause Plaintiffs and Illinois consumers to purchase Starkey Water.

85. Whole Foods' misrepresentations and material omission repeatedly occurred in Whole Foods' trade or business and were capable of deceiving a substantial portion of the consuming public.

86. If Plaintiffs Lorenzo and Vienna Colucci and the Illinois-Only Class members had known Starkey water was much more highly infused with arsenic than competing brands and was not as wholesome, healthy, and safe as Defendant represented, they would never have purchased Starkey Water.

87. As a result of Whole Foods' conduct, Plaintiffs Lorenzo and Vienna Colucci and the Illinois-Only Class members have suffered actual damages in that they have purchased a product that they would never have purchased had they known the truth.

88. As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of Whole Foods set forth above, Plaintiffs Lorenzo and Vienna Colucci and the Illinois-Only Class members are entitled to actual damages, compensatory damages, penalties, attorney fees, and costs, as set forth in the Section 10a of the ICFA.

89. Whole Foods' deceptive, misleading, unfair, and unconscionable practices set forth above were done willfully, wantonly, and maliciously entitling Plaintiffs Lorenzo and Vienna Colucci and the Illinois Class members to an award of punitive damages.

## COUNT IV
### Recovery for Unjust Enrichment/Quasi-Contract

90. Plaintiffs repeat and incorporate by reference the allegations contained in the paragraphs 1 through 53 above as if fully set forth herein.

91.   Plaintiffs and Class members conferred a substantial benefit on Whole Foods by purchasing Starkey Water.

92.   Whole Foods appreciated and/or realized the benefits in the amount of the purchase price it earned from sales of Starkey Water to Plaintiffs and Class members or, at a minimum, the difference between the price they were able to charge for Starkey Water and the price they would have been able to charge absent the conduct alleged herein.

93.   Whole Foods has profited from their unlawful, unfair, false, misleading, and deceptive practices and advertising at the expense of Plaintiffs and Class members, under circumstances in which it would be unjust for Whole Foods to retain the benefits.

94.   Plaintiffs do not have an adequate remedy at law against Whole Foods. Plaintiffs and Class members are entitled to recover from Whole Foods all amounts wrongfully collected and improperly retained by Whole Foods, plus interest thereon.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all claims for which a jury is available.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and Class members, demand judgment against Whole Foods and requests the entry of:

a.   An order certifying the Classes as requested herein;

b.   An order declaring that the conduct complained of herein violates the laws asserted;

c.   An order declaring that the conduct complained of herein constitutes unjust enrichment;

d.   An order requiring Whole Foods to undertake corrective action, and enjoining Whole Foods' conduct;

e.   An order awarding restitution and disgorgement of Whole Foods' revenues to Plaintiff and the proposed Class members;

f. An order awarding damages, including punitive damages, as appropriate;

g. An order awarding attorneys' fees and costs; and

h. An order providing such other and further relief as this Court may deem just, equitable, or proper.

Dated:  August 28, 2019  **BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**

_s/Patricia N. Syverson_
Patricia N. Syverson (CA SBN 203111)
Manfred P. Muecke (CA SBN 222893)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
mmuecke@bffb.com
Telephone: (619) 798-4593

Elaine A. Ryan (*To Be Admitted Pro Hac Vice*)
Carrie A. Laliberte (*To Be Admitted Pro Hac Vice*)
**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C**.
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
eryan@bffb.com
claliberte@bffb.com
Telephone: (602) 274-1100

Laurence D. Paskowitz
**THE PASKOWITZ LAW FIRM P.C.**
208 East 51st Street, Suite 380
New York, NY 10022
212-685-0969
lpaskowitz@pasklaw.com

Roy L. Jacobs
**ROY JACOBS & ASSOCIATES**
420 Lexington Avenue, Suite 2440

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

New York, NY 10170
212-867-1156
rjacobs@jacobsclasslaw.com

David N. Lake (CA SBN 180775)
**LAW OFFICES OF DAVID N. LAKE,**
**A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
(818) 788-5100
david@lakelawpc.com

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT