1  BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
2  PATRICIA N. SYVERSON (CA SBN 203111)
   600 W. Broadway, Suite 900
3  San Diego, California 92101
   psyverson@bffb.com
4  Telephone: (619) 798-4593

5  BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
6  ELAINE A. RYAN (*Admitted Pro Hac Vice*)
7  CARRIE A. LALIBERTE (*Admitted Pro Hac Vice*)
   2325 E. Camelback Rd. Suite 300
8  Phoenix, AZ 85016
   eryan@bffb.com
9  claliberte@bffb.com
   Telephone: (602) 274-1100

10 *Additional counsel on signature page*

11

12          **UNITED STATES DISTRICT COURT**

13          **CENTRAL DISTRICT OF CALIFORNIA**

14 DAVID BERKE, on behalf of himself        Case No. 2:19-cv-07471 PSG (KSx)
   and all others similarly situated,
15                                          **OPPOSITION TO DEFENDANTS'**
16          Plaintiff,                      **MOTION TO DISMISS PLAINTIFF'S**
                                            **SECOND AMENDED COMPLAINT**
17          v.
18                                          Date: September 21, 2020
                                            Time: 1:30 p.m.
19 WHOLE FOODS MARKET                       Crtrm: 6A – 6th Floor
20 CALIFORNIA, INC., WHOLE
   FOODS MARKET SERVICES, INC.,             The Hon. Paul S. Gutierrez
21 ALLEGRO COFFEE COMPANY,
22 and MRS. GOOCH'S NATURAL
   FOOD MARKETS, INC.,
23
24          Defendants.
25
26
27
28

          OPP'N TO MTD SAC

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ....................................................................................1

II.    SUMMARY OF RELEVANT ALLEGATIONS & FACTS ........................4

III.   ARGUMENT ........................................................................................5

    A.   Legal Standards ..........................................................................5

    B.   WFM Services is Subject to Personal Jurisdiction ...............................5

        1.   WFM Services' California-directed activities are extensive......7

        2.   Plaintiff's claims relate to the nationwide brand campaign ...................................................................................9

        3.   WFM Services makes no argument regarding "fair play and substantial justice" ...............................................9

    C.   Plaintiff Has Article III Standing .....................................................10

    D.   Federal Preemption Does Not Apply ...............................................15

    E.   Plaintiff Adequately Alleged His UCL and CLRA Claims...............19

        1.   The Complaint states UCL, FAL, and CLRA claims ............19

        2.   Whether Plaintiff has been deceived is a question of fact inappropriate for resolution on a motion to dismiss.........21

        3.   Defendants' "safe harbor" defense is baseless, as is their Rice and grape juice analogy...................................................21

IV.    CONCLUSION ...........................................................................22

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>CASES</u>

4    *ABC Servs. Grp., Inc. v. Health Net of Cal., Inc.*

5        2020 WL 2121372 (C.D. Cal. May 4, 2020)....................................................5

6    *Annunziato v. eMachines, Inc.*

7        402 F. Supp. 2d 1133 (C.D. Cal. 2005)........................................................20

8    *Astiana v. Hain Celestial Grp., Inc.*

9        783 F.3d 753 (9th Cir. 2015) ................................................................15, 16

10    *Azimpour v. Sears, Roebuck & Co.*

11        2016 WL 7626188 (S.D. Cal. Oct. 17, 2016)................................................10

12    *Billion Int'l Trading, Inc. v. Universal Sportswear, Inc.*

13        2013 WL 12403058 (C.D. Cal. Feb. 21, 2013)................................................9

14    *Boysen v. Walgreen Co.*

15        2012 WL 2953069 (N.D. Cal. July 19, 2012)................................................14

16    *Brazil v. Dole Food Co., Inc.*

17        935 F.Supp.2d 947 (N.D. Cal. 2013)............................................................13

18    *Chavez v. Blue Sky Nat. Bev. Co.*

19        340 F. App'x 359 (9th Cir. 2009) ................................................................10

20    *Calderon v. Kate Spade and Co., LLC*

21        2020 WL 1062930 (S.D. Cal. Mar. 5, 2020)................................................21

22    *Dana v. Hershey Co.*

23        180 F. Supp. 3d 652 (N.D. Cal. 2016)..........................................................12

24    *Davis v. HSBC Bank*

25        691 F.3d 1152 (9th Cir. 2012)................................................................3, 21

26    *Doe v. Unocal Corp.*

27        248 F.3d 915 (9th Cir. 2001) ........................................................................5

28

*Emerald Coast Utils. Auth. v. 3M Co., et al.*

    746 F. Supp. 2d 1216 (N.D. Fla. 2010)........................................................14

*Eminence Capital, LLC v. Aspeon, Inc.*

    316 F.3d 1048 (9th Cir. 2003)..................................................................22

*Frye v. L'Oreal USA, Inc.*

    583 F. Supp. 2d 954 (N.D. Ill. 2008)........................................................14

*Gaminde v. Lang Pharma Nutrition, Inc.*

    2019 WL 1338724 (N.D. N.Y. Mar. 25, 2019)........................................12

*Gardner v. StarKist Co.*

    418 F. Supp. 3d 443 (N.D. Cal. 2019)......................................................20

*Hadley v. Kellogg Sales Co.*

    273 F. Supp. 3d 1052 (N.D. Cal. 2017) .........................................3, 17, 19

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*

    2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)...........................................14

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*

    485 F.3d 450 (9th Cir. 2007) .....................................................................8

*Hinojos v. Kohl's Corp.*

    718 F.3d 1098 (9th Cir. 2013)...............................................................2, 10

*Iberville Parish Waterworks Dist. No. 3 v. Novartis Crop Prot., Inc.*

    45 F. Supp. 2d 934 (S.D. Ala. 1999) .......................................................14

*In re Fruit Juice Prods. Mktg. and Sales Practices Litig.*

    831 F. Supp. 2d 507 (D. Mass. 2011).......................................................13

*In re Tobacco II Cases*

    46 Cal. 4th 298 (2009)..............................................................................20

*In re Whole Foods Mkt.*

    163 F. Supp. 3d 385 (W.D. Tex. 2016).....................................................18

*Izquierdo v. Panera Bread Co.*

    2020 WL 1503557 (S.D.N.Y. Mar. 30, 2020) .........................................20

*Jacobs v. Osmose, Inc.*

2002 WL 34241682 (S.D. Fla. Jan. 3, 2002) ................................................. 14

*Jones v. ConAgra Foods, Inc.*

912 F.Supp.2d 889, 901 (N.D. Cal. 2012) ..................................................... 13

*Kellman v. Whole Foods Mkt., Inc.*

313 F. Supp. 3d 1031 (N.D. Cal. 2018) ........................................................... 8

*Kellman v. WFM Private Label, L.P.*

2019 WL 1429576 (N.D. Cal. Mar. 29, 2019) .................................... 2, 6, 7, 9

*Khasin v. Hershey Co.*

2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) ........................................... 3, 21

*Koronthaly v. L'Oreal USA, Inc.*

2008 WL 2938045 (D. N.J. July 29, 2008) ..................................................... 14

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*

114 F. Supp. 3d 852 (N.D. Cal. 2015) ........................................................... 20

*Lara v. LG Elecs. U.S.A., Inc.*

2018 WL 3748177 (D. Minn. Aug. 7, 2018) .................................................. 10

*Lindora, LLC v. Isagenix Int'l, LLC*

198 F. Supp. 3d 1127 (S.D. Cal. 2016) ............................................................ 6

*Manzo v. Energizer Holdings, Inc.*

2019 WL 7940695 (C.D. Cal. Aug. 28, 2019) .................................................. 8

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*

647 F.3d 1218 (9th Cir. 2011) ..................................................................... 6, 7

*Maya v. Centex Corp.*

658 F.3d 1060 (9th Cir. 2011) ....................................................................... 12

*Meaunrit v. Pinnacle Foods Grp., LLC*

2010 WL 1838715 (N.D. Cal. May 5, 2010) ................................................. 14

*Medtronic, Inc. v. Lohr*

518 U.S. 470 (1996) ....................................................................................... 17

*McCoy v. Nestle USA, Inc.*
    173 F. Supp. 3d 954 (N.D. Cal. 2016)............................................................12

*Monster Energy Co. v. Vital Pharm., Inc.*
    2019 WL 2619666 (C.D. Cal. May 20, 2019)................................................8

*NFC Collections Ltd. Liab. Co. v. Deutsche Bank Aktiengesellschaft*
    2013 WL 3337800 (C.D. Cal. July 2, 2013) ..................................................9

*Ott v. Mortg. Inv'rs Corp. of Ohio*
    65 F. Supp. 3d 1046 (D. Or. 2014).................................................................8

*Peviani v. Hostess Brands, Inc.*
    750 F. Supp. 2d 1111 (C.D. Cal. 2010)........................................................19

*Prescott v. Bayer Healthcare LLC*
    2020 WL 4430958 (N.D. Cal. July 31, 2020) ..............................................17

*Rivera v. Wyeth-Ayerst Labs.*
    283 F.3d 315 (5th Cir. 2002) ........................................................................13

*Rosenthal & Rosenthal of Cal., Inc. v. Hilco Trading*
    2020 WL 2510587 (C.D. Cal. Apr. 14, 2020)................................................9

*Rubio v. Capital One Bank*
    613 F.3d 1195 (9th Cir. 2010) ................................................................19, 21

*Salazar v. Honest Tea, Inc.*
    74 F. Supp. 3d 1304 (E.D. Cal. 2014) ..........................................................18

*Santos v. Carmax Bus. Servs., LLC*
    2018 WL 7916823 (N.D. Cal. May 8, 2018) ................................................21

*Spokeo, Inc. v. Robins*
    136 S. Ct. 1540 (2016) ..................................................................................10

*Tran v. Sioux Honey Ass'n, Coop.*
    2018 WL 10612686 (C.D. Cal. Aug. 20, 2018) ......................................15, 16

*Trazo v. Nestlé USA, Inc.*
    2013 WL 4083218 (N.D. Cal. Aug. 9, 2013)................................................18

*Walden v. Fiore*
     571 U.S. 277 (2014) ........................................................................8

*Wallace v. Conagra Foods, Inc.*
     747 F.3d 1025 (8th Cir. 2014)......................................................12

*Williams v. Gerber Prods. Co.*
     552 F.3d 934 (9th Cir. 2008) .................................................3, 21

*Williams v. Purdue Pharma Co.*
     297 F. Supp. 2d 171 (D.D.C. 2003) ............................................13

*Yahoo! Inc. v. La Ligue Contre Le Racisme*
     433 F.3d 1199 (9th Cir. 2006)........................................................5

*Zeiger v. WellPet LLC*
     304 F. Supp. 3d 837 (N.D. Cal. 2018)..........................................13

**U.S. CODE**

21 U.S.C. § 343(a)(1).........................................................3, 16, 17

## I.   INTRODUCTION

Defendants Whole Foods Market California, Inc.; Whole Foods Market Services, Inc.; Allegro Coffee Company; and Mrs. Gooch's Natural Food Markets, Inc.'s (collectively, "Whole Foods" or "Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint (D.E. 36 ("MTD" or "Motion")) should be denied because: (1) personal jurisdiction over Whole Foods Market Services, Inc. ("WFM Services") flows through Whole Foods' website and National Brand Campaign – which were both spearheaded by WFM Services – to which Plaintiff and other California consumers were repeatedly exposed; (2) Plaintiff has pled an Article III injury; (3) Plaintiff's claims are consistent with and not preempted by federal law; and (4) Plaintiff has plausibly alleged UCL and CLRA claims based both on the pure, high quality representations displayed on the Starkey Water bottles he purchased and the long-term, pervasive advertising campaign he was exposed to, which touts the quality of Whole Foods' products.   Thus, all four grounds on which Defendants move to dismiss fail.

Plaintiff's claims are based on Whole Foods' misrepresentations about *both* the quality of Starkey Water, specifically, and Whole Foods' products in general. Not only does Whole Foods misrepresent that Starkey Water exudes "purity" on the bottles themselves, and is "pure", and "untouched by surface contamination" in other marketing (D.E. 33 ("SAC"), ¶¶ 2, 6), but Whole Foods has long represented that it is "America's Healthiest Grocery Story" and the products it sells reflect "the strictest quality standards in the industry," which is not true for Starkey Water.   *Id.* at ¶¶ 1-2.   Integral to communicating these quality representations to the consuming public is the Whole Foods website and the Whole Foods Market National Brand Campaign, both of which are run by WFM

Services.  Ex. A, ¶¶ 9(b), (i).[1]  The website allows California consumers to order Starkey Water, promotes "local sales specific to their California stores," and even promotes Californian hyper-local offerings, such as the "Malibu Pizza" or the "Beverly Hills Sandwich."  Exs. B-D.  The National Brand Campaign is run by WFM Services in partnership with MullenLowe Los Angeles, and focuses on the health and quality standards that Whole Foods' products meet.  Ex. A, ¶ 9(d)-(f), (h).  Through these California-specific activities, WFM Services has purposefully directed the marketing activities that form the basis of Plaintiff's claims toward California making it subject to personal jurisdiction in this Court, as the Northern District found just last year.  *Kellman v. WFM Private Label, L.P.*, 2019 WL 1429576, at *7-9 (N.D. Cal. Mar. 29, 2019).

Plaintiff was injured by the false and misleading quality representations.  He paid a substantial premium for Starkey Water in reliance on Whole Foods' quality representations, but received a Product that was anything but compliant with the "strictest standards in the industry" – Starkey Water contains the highest arsenic content of bottled water brands currently on the market.  SAC, ¶¶ 2, 4-5, 7, 18, 24-25, 34, 36.  Plaintiff would not have purchased Starkey Water had he known it contained far more arsenic than competing brands and did not live up to the "purity" and quality representations.  *Id.* at ¶¶ 5, 18, 25.  Thus, Plaintiff suffered an Article III injury in fact.  *E.g.*, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013) (individual suffers Article III injury in fact when they "paid more" for something than they "otherwise would have paid" or "bought [something] when they otherwise would not have done so").

No provision of federal law required Whole Foods to make the "purity" and other quality representations – it did so voluntarily.  As such, Defendants cannot escape Plaintiff's consumer claims on preemption grounds.  Plaintiff's false and

---

[1] All "Ex." cites are to the exhibits attached to the Declaration of Laurence D. Paskowitz, filed herewith.

misleading advertising claims are entirely consistent with and further the truth-in-advertising and consumer protection purposes of the federal scheme, which expressly prohibits the misbranding of food, including labeling that is "false or misleading in any particular." 21 U.S.C. § 343(a)(1); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1077-78 (N.D. Cal. 2017) (upholding action where multiple products with high sugar content were not as "healthy" as marketer claimed). Thus, Plaintiff's claims are not preempted.

Defendants' UCL and CLRA arguments also fail.  Plaintiff alleges an actionable claim specific to Starkey Water – not only does the Product label to which every consumer was exposed, including Plaintiff, explicitly misrepresent that the water reflects "purity," but the entire label and Whole Foods' broader advertising campaign reinforces the false and misleading message that Starkey Water is of the highest quality.  Plaintiff relied on these quality representations and was deceived. Whether a reasonable consumer is likely to be deceived is a question of fact inappropriate for resolution at this stage. *Khasin v. Hershey Co.*, 2012 WL 5471153, at *7 (N.D. Cal. Nov. 9, 2012) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008)).

Finally, Defendants' false and misleading conduct is not saved by the FDA's 10 ppb permissible arsenic content "safe harbor" because this case is about misleading consumers as to the quality of the water through false claims, an act not permitted by any federal statute or regulation. *See Davis v. HSBC Bank*, 691 F.3d 1152, 1164 (9th Cir. 2012).  Plaintiff is not seeking to force Defendants to list the arsenic content on the label; his claims have to do with untrue representations.  In other words, Defendants can legally market Starkey Water as is – arsenic and all – but they must stop creating purity and quality claims which mislead consumers.  To do otherwise is simply knowingly false marketing, which is exactly what Plaintiff claims here.

For these reasons, as more fully set forth below, Defendants' Motion should be denied.

## II.    SUMMARY OF RELEVANT ALLEGATIONS & FACTS

Whole Foods is a nationwide grocery chain which touts itself as "America's Healthiest Grocery Store," promising consumers for decades that it maintains "the strictest quality standards in the industry" and sells only the highest quality, purest, and most wholesome foods available.  SAC, ¶¶ 1-3, 18, 22-23, 25.  Key to this marketing message are a National Brand Campaign and the Whole Foods Market website, both run by WFM Services. Ex. A, ¶ 9.  Because Whole Foods' products are purportedly the best quality available, Whole Foods charges, and Plaintiff and consumers are willing to pay, a substantial premium for the products. *Id.* at ¶¶ 5, 18, 22, 36.  One of these products is Starkey Water, which is further represented on the water bottles themselves and in other marketing to be "pure," "pristine," and "untouched by surface contamination."  *Id.* at ¶¶ 2, 5-7, 20, 23(e). Plaintiff purchased Starkey Water throughout the Class period because Whole Foods' long-running marketing campaign led him to believe that he was buying the highest quality, safest, and most pure bottled water on the market, which the purity representations on the bottle confirmed.  *Id.* at ¶¶ 5, 18.  In truth, Starkey Water is contaminated with the highest levels of arsenic (a carcinogen that can lead to numerous health problems (*id.* at ¶¶ 2, 26-33)) of any bottled water on the market, with some bottles exceeding the maximum levels allowed by federal and state law.  *Id.* at ¶¶ 2, 4-5, 7, 24-25, 34, 36.  Thus, while Whole Foods' decades-long marketing campaign and Starkey Water-specific representations lead consumers to expect Starkey Water to surpass competitors in purity and safety, the exact opposite is true – Starkey Water never meets the quality and safety standards Whole Foods has indoctrinated consumers to expect.  *E.g.*, *id.* at ¶¶ 4-5, 25.  The presence of arsenic matters to consumers – it certainly mattered to Plaintiff (*id.* at ¶ 18) – and materially affects their decision whether to purchase Starkey Water

because, if consumers knew Starkey Water contained arsenic in much higher amounts than other commercially available brands, they – like Plaintiff (*id.*) – would not have purchased it, and certainly would not have paid a premium for it. *Id*. at ¶¶ 5, 18, 25, 36.

## III.   ARGUMENT

### A.   Legal Standards

Plaintiff will discuss the applicable law in response to Defendants' arguments.

### B.   WFM Services is Subject to Personal Jurisdiction

This Court has specific personal jurisdiction over WFM Services because Plaintiff has made a *prima facie* showing, when all of WFM Services' contacts with California are considered, that WFM Services has purposefully directed its activities in marketing Whole Foods' products, including Starkey Water, toward California; Plaintiff's claims arise out of WFM Services' marketing; and the exercise of jurisdiction comports with fair play and substantial justice.  *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (all contacts with forum state, whether wrongful or not, must be considered); *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2001) (court may consider evidence outside the pleadings in determining whether it has personal jurisdiction); *ABC Servs. Grp., Inc. v. Health Net of Cal., Inc.*, 2020 WL 2121372, at *9 (C.D. Cal. May 4, 2020) (setting forth purposeful direction factors).

Plaintiff's claims are substantially based on the promises Whole Foods has made "that it sells only the highest quality, purest, and most wholesome foods available."  SAC, ¶ 1; *see also* ¶¶ 2-3, 18, 22-23.  These promises form the basis for personal jurisdiction over WFM Services, as it is admittedly in charge of Whole Foods' National Brand Campaign.

As recently as 2019, in *Kellman*, WFM Services was held to have met the "purposeful direction" test applied in this Circuit due to many of the same connections that are present in this case:

> WFM Services actually or constructively knows that nearly 20% of Whole Foods's U.S. stores are in California (more than twice as many stores as in any other state). Additionally, WFM Services is responsible for the content and the design of Whole Foods's website and actively or constructively knows that the website directs California customers to Whole Foods's California stores, show California customers local sales specific to their California stores, shows California customers listings for Whole Foods's private-label products (including the products at issue in this action), and allows California customers to purchase those products online. It has aimed its conduct at the forum state.

2019 WL 1429576 at *17-18 (citing *Mavrix v. Photo, Inc. v. Brand Technologies, Inc.,* 647 F.3d 1218, 1230 (9th Cir. 2011) (fact that defendant "knows — either actively or constructively — about its California user base, and [] exploits that base for commercial gain" and "anticipated, desired, and achieved a substantial California viewer base" supports finding that defendant expressly aimed its conduct at California); *id.* at 1231 ("[W]here, as here, a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state."); *Lindora, LLC v. Isagenix Int'l, LLC,* 198 F. Supp. 3d 1127, 1139 (S.D. Cal. 2016) (fact that defendant sells more products to California customers than in any other state supports finding that the defendant expressly aimed its conduct at California)).

### 1.  **WFM Services' California-directed activities are extensive**.[2]

WFM Services' pervasive reach into California remains the same as described in *Kellman,* and continues to meet the test set forth in *Mavrix*, *supra*. WFM Services runs the Whole Foods website (Ex. A, ¶ 9(i)), and any California consumer can easily find that website's Starkey Water page, which contains a picture of the bottle, states where in California it may be purchased, lists multiple positive Starkey Water attributes (but never mentions arsenic content), and prompts the viewer to "Order Online."  Ex. B.  The website informs California customers that WFM Services is to be considered the seller of all products featured on the website and sold in any Whole Foods store, including in California:

> *Whole Foods Market Services, Inc*. (with its affiliates, "Whole Foods Market," "we," "our," or "us") *distributes and sells products, and provides products and services to you when you visit or shop on our websites or at our stores,* use our mobile applications, or use software we provide in connection with any of the foregoing (collectively, the "Service").

Ex. C (emphasis added).

As referenced in *Kellman,* WFM Services' website promotes "local sales specific to their California stores", and even promotes Californian hyper-local offerings, such as the "Malibu Pizza" or the "Beverly Hills Sandwich."  Ex. D. The California-related contacts go beyond what is noted in *Kellman*, as WFM Services concedes that it runs Whole Foods' National Brand Campaign.  Ex. A, ¶¶ 9(a)-(b).  To do so, it uses a national advertising agency with offices in Los

---

[2] This Court permitted jurisdictional discovery.  D.E. 39.  Thereafter, the parties entered into an evidentiary stipulation concerning certain marketing activities engaged in by WFM Services.  The stipulation is attached as Ex. A.

Angeles – the video ads created by that agency that can be found on the Internet bear the name "MullenLowe Los Angeles." Ex. A, ¶ 9(d); Ex. E.

This multitude of contacts easily amounts to a *prima facie* showing of purposeful direction. *See, e.g.*, *Manzo v. Energizer Holdings, Inc.,* 2019 WL 7940695, at *4 (C.D. Cal. Aug. 28, 2019) ("Because Plaintiff has established a *prima facie* case that Energizer Holdings was responsible for marketing these products, the first two prongs of the specific jurisdiction analysis are satisfied"). This is true regardless of whether Plaintiff purchased through the website or at a store. *See Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way"). This is well illustrated by *Kellman*, where plaintiff did not purchase via the Whole Foods website, but rather in its supermarkets. *Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1040-41 (N.D. Cal. 2018) (prior opinion). Nonetheless, the court found the website-related contacts with California to be crucial to its analysis. *See supra.*

In *Monster Energy Co. v. Vital Pharm., Inc.*, 2019 WL 2619666, at *6 (C.D. Cal. May 20, 2019), jurisdiction was found where defendant engaged in: "(1) actively targeting advertising at California consumers; (2) making allegedly false and misleading statements to a national audience which includes California consumers; and (3) operating a commercial website through which products bearing allegedly false and misleading statements are sold." *Accord, Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1057 (D. Or. 2014) (oversight of 50-state marketing campaign sufficient to find purposeful direction in single forum state). WFM Services does the same. Thus, there is no resemblance here to the "entire passive website" at issue in *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) (MTD at 7).

### 2.  Plaintiff's claims relate to the nationwide brand campaign.

Plaintiff was injured by the Whole Foods National Brand Campaign aimed at consumers nationwide, using digital media, national TV, and radio outlets that conveyed the following or substantially similar messages: (1) that Whole Foods maintains "the strictest quality standards in the industry" (SAC, ¶¶ 1, 23(b)); (2) that its "[s]tandards [] aren't standard anywhere else" (*id*.); and (3) that it sells "[t]he highest quality natural and organic foods" (*id*. at ¶ 23(d)).  Ex. A.   The test for personal jurisdiction in these circumstances is whether Plaintiff's claims against WFM Services would exist "but for" WFM Services' acts.  *Rosenthal & Rosenthal of Cal., Inc. v. Hilco Trading,* 2020 WL 2510587, at 6 (C.D. Cal. Apr. 14, 2020).

They would not.  "The WFM National Brand Campaign has included use of the tag lines 'America's Healthiest Grocery Store' and 'Values Matter' and the phrase 'the highest standards weren't available, so we created them' in the context of the large commercial or advertisement."  Ex. A, ¶ 9(h).  Had Plaintiff never been exposed to this brand message via advertising directed at California, he would never have been misled by WFM Services' quality claims.  Thus, this prong of the relevant test is satisfied.  *See, e.g.*, *Billion Int'l Trading, Inc. v. Universal Sportswear, Inc.*, 2013 WL 12403058, at *4 (C.D. Cal. Feb. 21, 2013) ("the Moving Defendants knew the harm stemming from their allegedly fraudulent acts would be felt in California"); *NFC Collections Ltd. Liab. Co. v. Deutsche Bank Aktiengesellschaft*, 2013 WL 3337800, at *14 (C.D. Cal. July 2, 2013) ("the inducement of reliance in California is a sufficient act within California...where the cause of action arises out of that inducement") (citations omitted).

### 3.  WFM Services makes no argument regarding "fair play and substantial justice."

Because WFM Services makes no argument regarding the final purposeful direction factor, it should be deemed established.  *Kellman*, 2019 WL 1429576, at

*9 (third factor met where plaintiff established first two factors and WFM Services did not meet its burden to show that the exercise of jurisdiction would be unreasonable because it did not address fair play and substantial justice factor).

### C.    Plaintiff Has Article III Standing

Plaintiff has Article III standing as he has pled injury-in-fact.[3]  Article III standing requires that Plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Plaintiff alleges that Starkey Water is falsely and misleadingly advertised as "pure," "untouched by surface contamination," and – like all products sold at Whole Foods – compliant with "the strictest quality standards in the industry[,]" for which "Plaintiff and other purchasers of Starkey Water paid a hefty premium".  SAC, at ¶¶ 1-2, 5-7, 22-23, 25, 36.  In fact, Starkey Water is "the most arsenic-laden bottled water product currently on the market."  *Id.* at ¶ 5.  Had Plaintiff known the truth about Starkey Water, he would not have purchased it or paid a premium for it.  *Id.* at ¶¶ 5, 18.

Someone who alleges that they "paid more" for something than they "otherwise would have paid" or "bought [something] when they otherwise would not have done so" has "suffered an Article III injury in fact."  *Hinojos*, 718 F.3d at 1104 n.3.  Specifically, a consumer sustains an "injury in fact" where he "asserts that he purchased beverages that he otherwise would not have purchased in absence of the alleged misrepresentations."  *Chavez v. Blue Sky Nat. Bev. Co.*, 340 F. App'x 359, 361 (9th Cir. 2009).  *Accord*, *Azimpour v. Sears, Roebuck & Co.*, 2016 WL 7626188, at *3 (S.D. Cal. Oct. 17, 2016) ("plaintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property' . . . and have standing to sue"); *Lara v. LG Elecs. U.S.A., Inc.*, 2018 WL

---

[3] Defendants do not challenge causation or redressability.  *See id.* at 8-9.

3748177, at *3 (D. Minn. Aug. 7, 2018) ("Villa Lara argues that he overpaid for a product due to misrepresentations regarding the nature and quality of the product, and that overpayment is an economic injury sufficient to satisfy the UCL's standing requirements") (applying California law).

Plaintiff's claims are not speculative. It is not "pure speculation" that Starkey Water contains arsenic (MTD, at 9). Whole Foods admits it does. *See* SAC, at ¶ 34, and *infra*. Nor is it "speculation" that Plaintiff's purchases contained substantial amounts of arsenic as multiple tests done by the FDA, Consumer Reports, and the Center for Environmental Health have confirmed that Starkey Water contains high levels of arsenic—by far the highest presently on the market. *Id.* at ¶¶ 2-3, 24-25. Whole Foods itself concedes on its Starkey Water website in a link hidden at the bottom of the page that: "Arsenic levels above 5 ppb and up to 10 ppb are present in your drinking water." Ex. F.[4]

That Plaintiff would not have purchased Starkey Water but for the deception practiced on him remains true regardless of the specific amount of arsenic in the bottles he bought. Plaintiff did not receive the "quality" and "purity" guarantees he paid for. *E.g.*, SAC, ¶ 25. And that is also why Plaintiff need not allege that he tested the particular bottles he purchased. MTD, at 9. *All* Starkey bottles contain considerably more arsenic than in comparable brands and tap water. SAC, at ¶¶ 2, 4-5, 8, 18, 25. And, as alleged, sometimes Starkey Water is barely FDA compliant and sometimes it is not compliant at all – it has even been recalled twice for arsenic violations. *Id.* at ¶¶ 2, 4, 24-25, 34. And it is never "pure." Purchasers of Starkey Water are unwilling participants in a "lottery" wherein they *cannot know* whether the bottle they are purchasing exceeds FDA

---

[4] This hidden report further concedes: "The State Department of Public Health continues to research the health effects of low levels of arsenic, which is a mineral known to cause cancer in humans at high concentrations *and is linked to other health effects, including, but not limited to, skin damage and circulatory problems*." (emphasis added).

limits and *do not know* they are buying the most arsenic laden product on the shelves. "[I]t would be a bizarre result if sellers advertising food as [here, "pure" and of the highest quality] could knowingly mix compliant and non-compliant products with impunity so long as there was no way for a buyer" to know. *Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 662-63 (N.D. Cal. 2016) (dismissed on other grounds).

Thus, allegations of a tainted supply chain also establish Article III standing. *See Dana*, 180 F. Supp. 3d at 662, n.8, 663 (holding plaintiff had standing to pursue UCL, CLRA, and FAL claims based on defendants' failure to disclose slave and child labor in their supply chain even though plaintiff did not allege "that the specific products she purchased were produced with the labor abuses at issue because "it is plausible that a consumer would place less value on a product produced from a supply chain involving severe labor abuses [and Plaintiff] alleges that she purchased products or paid a higher price for them because she was deceived regarding the labor practices in the supply chain."); *McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 962-64 (N.D. Cal. 2016) (same). But *cf. Wallace v. Conagra Foods, Inc.*, 747 F.3d 1025, (8th Cir. 2014) (plaintiffs' allegations did not "establish that all or even most Hebrew National products were not kosher," such that the particular packages they purchased "more than likely were" kosher); and *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724, at *2 (N.D. N.Y. Mar. 25, 2019) (plaintiffs relied solely on one USDA study that only tested two bottles of the product, and unlike here, there was not a concession by defendant that all similar products had the issue of which plaintiffs complained) (MTD, at 10-11).

Thus, for all the reasons detailed above, Plaintiff has pled a "quintessential injury-in-fact" – he "spent money that, absent [D]efendants' actions, [he] would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).

Physical harm is not necessary.  *See, e.g.*, *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 846 (N.D. Cal. 2018) (plaintiffs pled a "quintessential injury-in-fact" when they alleged "that were it not for defendants' labeling, which omit the presence of lead, arsenic, and BPA in their Products, plaintiffs would not have purchased and spent money on their Products"); *Brazil v. Dole Food Co., Inc.*, 935 F.Supp.2d 947, 961–62 (N.D. Cal. 2013) (plaintiff had standing where he alleged he would not have purchased misbranded fruit products absent defendants' representations, even where plaintiff did not allege physical harm); *Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 901 (N.D. Cal. 2012) (plaintiffs had standing because they "sufficiently alleged that they paid an 'unwarranted premium' for the allegedly mislabeled products" and "that had they been aware that the labeling was inaccurate, they would not have purchased Defendant's products") (internal case citations omitted).

The remaining cases cited by Defendants (MTD, at 12-13), are largely out-of-Circuit and are factually distinguishable.  They do not resemble this case, which is based on a variety of provable misrepresentations aimed at making consumers believe that the product they bought was better than any other on the market, purer, and of higher quality.  All such claims were made on a voluntary basis by Defendants who thereby put the "quality" of their products at issue.  *Cf. In re Fruit Juice Prods. Mktg. and Sales Practices Litig.*, 831 F. Supp. 2d 507, 511-13 (D. Mass. 2011) (no false quality claims were made as to fruit juice products, such products allegedly contained only "small" amounts of lead, and unlike here plaintiffs never asserted "they would have purchased different or cheaper fruit juice products had they known about the lead."); *see also Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176-77 (D.D.C. 2003) (case involved "a consumer who purchased a product that acted as advertised for him but not for others, and who, in that sense, has suffered no injury…"); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002) (plaintiffs admitted they received the

benefit of their bargain as the drug at issue was not defective as to them, injuring only non-class members); *Boysen v. Walgreen Co.*, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012) (pure omission case containing no allegations that had the lead and arsenic in juice been disclosed plaintiff would have or could have purchased an alternative juice with less lead and arsenic); *Herrington v. Johnson & Johnson Consumer Companies, Inc.*, 2010 WL 3448531, at *4 (N.D. Cal. Sept. 1, 2010) (no allegations that plaintiffs overpaid for products or they posed a risk of harm); *Meaunrit v. Pinnacle Foods Grp., LLC*, 2010 WL 1838715, at *1, *3 (N.D. Cal. May 5, 2010) (no allegations that plaintiffs would not have purchased pies or that they were not fit to consume, just that they "*might* contain harmful pathogens and, if consumers undercook [them], these pathogens could cause illness") (emphasis added); *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 958 (N.D. Ill. 2008) (plaintiff did "not allege that she would not have purchased lipstick, that she would have purchased cheaper lipstick, or that the lipstick had a diminished value because of the lead[,]"); *Koronthaly v. L'Oreal USA, Inc.*, 2008 WL 2938045, at *5 (D. N.J. July 29, 2008) (plaintiff only alleged the lipstick's lead levels were unsatisfactory, but did not dispute she got what she paid for); *Jacobs v. Osmose, Inc.*, 2002 WL 34241682, at *1 (S.D. Fla. Jan. 3, 2002) (no factual allegations concerning plaintiff's injury).

These cases have nothing in common with the case at bar.  And, the two water system cases Defendants cite are both factually and procedurally distinguishable.  *Emerald Coast Utils. Auth. v. 3M Co., et al.*, 746 F. Supp. 2d 1216, 1232 (N.D. Fla. 2010) (water utility plaintiff did not have standing *at summary judgment* to sue industrial defendants for contaminants in water supply where it "failed to show any concrete costs or expenditures related to monitoring its water or changing its filters"); *Iberville Parish Waterworks Dist. No. 3 v. Novartis Crop Prot., Inc.*, 45 F. Supp. 2d 934, 938-42 (S.D. Ala. 1999) (water systems plaintiffs did not have standing *at summary judgment* to recover money

they never spent to remove alleged contaminant from water, all costs they did incur were spent for other reasons, and they lacked standing to redress a future injury that "may never occur").

Thus, under all relevant authorities, Plaintiff has standing to pursue his claims.

### D.    Federal Preemption Does Not Apply

Plaintiff's claims are also not preempted.  There is no preemption where a consumer claims deception as a result of misleading advertising statements, which is exactly what Plaintiff alleges here.  *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 758 (9th Cir. 2015).  In *Astiana*, the Ninth Circuit explained that "FDA regulations do not require [the defendant] to label its products as 'All Natural' or 'Pure Natural,'" --therefore basing liability on these allegedly misleading statements "does not run afoul of the FDCA."  *Id.   Accord,   Tran v. Sioux Honey Ass'n, Coop.*, 2018 WL 10612686, at *3 (C.D. Cal. Aug. 20, 2018) (holding that FDCA and NLEA did not expressly preempt claims based on allegedly misleading description of food product as "pure" and "100% pure").   In *Tran*, the honey product at issue contained trace amounts of the pesticide glyphosate.  The court explained that even if federal rules allowed glyphosate, the voluntary positive claims about the product removed any preemption issue.  Indeed, in the future, the defendant could avoid any consumer lawsuits without altering the product or disclosing the glyphosate, *by merely ceasing its false quality promises*:

> Sioux Honey fails to identify any federal requirements that would be impossible to comply with should Tran prevail and Sioux Honey be required to remove the terms "Pure" and "100% Pure" from its product labels. Nor does Sioux Honey show how such a requirement would stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress. Sioux Honey could continue to manufacture and sell its honey products with trace amounts of

glyphosate, and it could continue to omit disclosing the presence of trace amounts of glyphosate on its product labels. Moreover, if the words "Pure" and "100% Pure" are in fact misleading as to Sioux Honey's honey, then requiring their removal hardly impedes Congress' goals with respect to the FDCA. Under federal law, food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1).

*Id.*

According to the teachings in *Astiana* and *Tran*, if a marketer simply labels its product "bottled water", and says nothing further, no consumer can maintain that the product has been falsely represented, even if that water contained arsenic within the legal limit. But the situation changes if that marketer begins falsely advertising its bottled water. Here, Whole Foods launched a National Brand Campaign which purposely led consumers to believe they were purchasing high-priced products at an elite store, and obtaining goods that reflected purity, quality, and superiority to anything marketed by competitors. Whole Foods promises "standards that aren't standard anywhere else" and "*the strictest quality standards in the industry…*" (SAC, ¶¶ 1, 22-23). But Whole Foods' in-house bottled brand, Starkey Water, is not what consumers were led to believe. Starkey Water supposedly fits right in with the other superior products, as its "purity" has supposedly been protected for 11,000 years. *Id.* at ¶ 6. But the truth is that Starkey Water contains the highest level of arsenic of any bottled water on the market, far higher than its competitors and far higher than tap water, as bottled water and tap water usually contain close to zero arsenic. *Id.* at ¶ 26. Starkey Water is not "pure." *See infra.* It sometimes exceeds the federal legal arsenic limit, and was twice recalled for doing so. *Id.* at ¶¶ 3- 4.

Having made false *voluntary statements* about the quality of Starkey Water, Whole Foods cannot escape consumer claims on preemption grounds, especially

considering the "strong presumption against preemption" that applies here. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).  Nothing in the FDCA or NLEA, the federal statutes concerning labeling, protect marketers when they create false impressions about the products they sell.  In fact, the FDCA expressly prohibits the misbranding of food, including labeling that is "false or misleading in any particular."  21 U.S.C. § 343(a)(1); *Hadley*, 273 F. Supp. 3d at 1077-78 (upholding action where multiple products with high sugar content were not as "healthy" as marketer claimed).  Thus, Plaintiff's claims are entirely consistent with and not preempted by the federal scheme.

This is true regardless of whether the arsenic content of Starkey Water exceeded the federal legal arsenic limit.  Consumer claims may be upheld where consumers would be dissuaded from purchasing the product's ingredient, even if that ingredient is technically legal, but different from what consumers were led to expect.  *See Prescott v. Bayer Healthcare LLC,* 2020 WL 4430958, at *2-3, *4 (N.D. Cal. July 31, 2020) (holding that false quality claims as to sunscreen were not preempted, and noting that: "Plaintiffs' claims do not require the Court to determine whether chemical or mineral active ingredients are harmful or safe for use").  Arsenic is a controversial ingredient that consumers wish to avoid if possible, which is why California requires consumers to be warned about its presence*.  See infra.*  It is also why all of Whole Foods' competitors filter it out. SAC, ¶ 26.  Thus, it may be reasonably inferred that Whole Foods' customers would not purchase Starkey Water if accurately marketed*.*  As currently marketed and sold, consumers are receiving a product that is contrary to what they have been conditioned to expect at Whole Foods, and many better alternatives at lower prices exist elsewhere.  SAC, at ¶¶ 22, 26, 36.

Also consistent with FDA requirements and further underscoring that Plaintiff's claims are not preempted, is Whole Foods' misrepresentation on the Starkey Water bottle that the Product reflects "purity" that has been protected for

11,000 years, making it "some of the purest and most pristine water available in the U.S." *Id.* at ¶¶ 6, 23(e).  Not so by a long shot—Starkey Water is the most *impure* bottled water on the shelves.  Whole Foods completely ignores the fact that the FDA discourages the use of the word pure, as "pure may be confused with the term 'purified' and consumers may be misled into believing that bottled water labeled as 'pure' has been treated to substantially decrease the total dissolved solids content." *Id.*, at ¶ 7 (citing 60 FR 57076, 57099).  Starkey Water has not been so treated, and the purity claim is a misleading illusion.  *Id*.  This suit furthers the FDA policy.

In sum, Plaintiff is not seeking to require arsenic to be listed, or trying to invent his own methodology for measuring it.  This distinguishes the authorities Defendants cite.  MTD, at 17-18.  Unlike *Salazar v. Honest Tea, Inc*., 74 F. Supp. 3d 1304 (E.D. Cal. 2014), Plaintiff is not making an argument based on a methodology differing from the FDA methodology that some specific FDA ingredient labeling rule has been violated; Plaintiff claims Starkey Water is the lowest quality of any brand on the market (no matter how it is tested) and not as promised.  *Cf. id.* at 1311-14.  In *Trazo v. Nestlé USA, Inc.*, 2013 WL 4083218, at *6 (N.D. Cal. Aug. 9, 2013), one claim was preempted because plaintiff was arguing that a term the FDA never used to describe antioxidant content (that it was a "source") had to meet the FDA criteria for a term the defendant *did not use,* "good source."  Plaintiff could not create a new FDA definition by claims which would "conflate" one term with the other.  *Id.*  Nor is *In re Whole Foods Mkt.*, 163 F. Supp. 3d 385 (W.D. Tex. 2016) on point, as there (relying solely on a Consumer Reports article), "Plaintiffs [sought] to impose liability on the Defendants based on a testing methodology that is more burdensome than that provided under the FDCA." *Id.* at 393.  Plaintiff here is not quibbling about testing methodologies at all, and is content to accept Starkey Water's own findings, and those of its regulator, the FDA.  SAC ¶¶ 2, 7, 24, 34.  The FDA has

not approved Defendants' marketing claims, nor is Plaintiff seeking to stop Defendants from making any claim permitted by the FDA, which distinguishes *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1119 (C.D. Cal. 2010) ("Plaintiff's claims seek to enjoin the use of the very term permitted by the NLEA [to describe trans fat levels] and its accompanying regulations").  To the extent Whole Foods is quarreling with the alleged fact that unfiltered Starkey Water can—and has—exceeded legal arsenic limits, its quarrel is with the FDA and state regulators who found unlawful arsenic levels, not with Plaintiff.

It is not lawful to misrepresent Starkey Water as pure when it is not, or to include it among the products that purportedly exceed the quality standards applied by competitors when they filter out almost all arsenic.  Whole Foods chose to make these claims, despite its knowledge that they were not true and would be relied upon.  Preemption does not apply.[5]

## E.   Plaintiff Adequately Alleged His UCL and CLRA Claims

### 1.  <u>The Complaint states UCL, FAL, and CLRA claims</u>.

"A business act or practice may violate the UCL if it is either 'unlawful', 'unfair' or 'fraudulent.'  Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank,* 613 F.3d 1195, 1203 (9th Cir. 2010). Plaintiff has pleaded all three. SAC, ¶¶ 52, 54, 57.  Plaintiff principally alleges that Defendants have heavily advertised "for decades" that Whole Foods' products meet the highest standards and are of the highest quality, when they sell the lowest quality bottled water as a premium product.  This combined with the false statement on every Starkey Water label that the product exudes "purity" are more than enough to set forth a viable claim.  *Cf. Hadley*, 273 F. Supp. 3d at 1097 (where company touted how "healthy" its line of products was, it acquired a duty to disclose ingredients such as high sugar that contradicted the brand message);

---

[5]  Although Plaintiff has not alleged a Prop. 65 claim, Whole Foods is on actual or constructive notice that it is indeed required to warn of arsenic in conjunction with

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.,* 114 F. Supp. 3d 852, 861 (N.D. Cal. 2015)) (consumer laws were violated by false claims of company's "industry-leading" high standards); *Annunziato v. eMachines, Inc.,* 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) (consumer action upheld where product manual boasted company's products met the "most stringent quality control tests"); *Izquierdo v. Panera Bread Co.,* 2020 WL 1503557, at *5-8 (S.D.N.Y. Mar. 30, 2020) (selling poor quality product violated the consumer laws where defendant's branding led plaintiff to expect Panera to offer food of a higher quality).

Defendants' long-term advertising campaign concerning Whole Foods' quality detailed in the SAC and upon which Plaintiff relied, sufficiently demonstrates reliance on Defendants' false conduct. *E.g.*, SAC, ¶¶ 1-4. *See, e.g.*, *Gardner v. StarKist Co.,* 418 F. Supp. 3d 443, 456-57 (N.D. Cal. 2019) ("As plaintiffs correctly point out, they are not required to allege the specific advertisements that they personally relied on; allegations of a long-term, pervasive advertising campaign suffice at this stage.") (*citing In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009)).

The reliance requirement is also satisfied by the label representations themselves, as is the false/misleading/deceptive requirement. Not only does the label to which every consumer, including Plaintiff, was exposed explicitly state that the water reflects "purity," but the entire label reinforces that message by stating that the water: (1) comes from a well that is two miles deep; (2) is bottled in Idaho (a state with little development and few people); (3) was made by "Mother Nature"; and (4) contains only "beneficial minerals". *Id.* at ¶ 6. All of this was to give consumers the false impression that the water was pristine when in fact it is loaded with far more arsenic than tap water or competitive bottled brands. *Id.* at ¶ 5.

its marketing of Starkey Water in California. *See* https://www.p65warnings.ca.gov/chemicals/arsenic. It does not do so.

### 2. **Whether Plaintiff has been deceived is a question of fact inappropriate for resolution on a motion to dismiss.**

Defendants' argument that Plaintiff has failed to state consumer protection claims because its Starkey Water label is not likely to deceive a reasonable consumer is not appropriate for decision at this stage. *See, e.g.*, *Khasin*, 2012 WL 5471153, at *7 (rejecting argument that plaintiff failed to plead a plausible legal theory because "reasonable consumer[s]" would not have been deceived because such issues involve questions of fact and are therefore "beyond the scope" of a Rule 12(b)(6) motion) (citing *Williams*, 552 F.3d at 938-39).

As shown above, consumers do rely upon assertions of higher or superior quality, and cases of this nature have been repeatedly upheld. *See Santos v. Carmax Bus. Servs., LLC*, 2018 WL 7916823, at *9 (N.D. Cal. May 8, 2018) (plaintiff adequately alleged CLRA, UCL, and FAL violations when he pled he relied on defendant's "quality assurances" when buying its product).

### 3. **Defendants' "safe harbor" defense is baseless, as is their rice and grape juice analogy.**

The "safe harbor" rule does not "condone misleading disclosures." *Rubio v. Capital One Bank,* 613 F.3d 1195, 1200 (9th Cir. 2010). Moreover, "[u]nder the safe harbor doctrine, '[t]o forestall an action under the unfair competition law, another provision must actually "bar" the action or clearly permit the conduct.'" *Davis*, 691 F.3d at 1164 (citation omitted). Misleading consumers is not permitted by any authority cited by Defendants. *Cf. Calderon v. Kate Spade and Co., LLC*, 2020 WL 1062930 at *7 (S.D. Cal. Mar. 5, 2020) (rejecting defense). Defendants' arguments about rice and grape juice (MTD at 22, n.6) are irrelevant, as Whole Foods rice and juice appear to meet the strictest standards available in the market. Should Defendants state in reply that their rice and juice contain *considerably more arsenic than competitive brands,* then—and only then—would the situation they posit would be analogous to the case at bar.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied.   If the Court dismisses any portion of the SAC, Plaintiff requests leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Dated: August 19, 2020

**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**

*s/Patricia N. Syverson*
Patricia N. Syverson (CA SBN 203111)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
Telephone: (619) 798-4593

Elaine A. Ryan (*Admitted Pro Hac Vice*)
Carrie A. Laliberte (*Admitted Pro Hac Vice*)
**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C**.
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
eryan@bffb.com
claliberte@bffb.com
Telephone: (602) 274-1100

Laurence D. Paskowitz
**THE PASKOWITZ LAW FIRM P.C.**
208 East 51st Street, Suite 380
New York, NY 10022
212-685-0969
lpaskowitz@pasklaw.com

Roy L. Jacobs
**ROY JACOBS & ASSOCIATES**
420 Lexington Avenue, Suite 2440
New York, NY 10170
212-867-1156
rjacobs@jacobsclasslaw.com

David N. Lake (CA SBN 180775)
**LAW OFFICES OF DAVID N. LAKE,**
**A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
(818) 788-5100
david@lakelawpc.com

*Attorneys for Plaintiff*

OPP'N TO MTD SAC

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2020, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send notification of such filing to the e-mail address denoted on the electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed August 19, 2020 at San Diego, California.

*/s/ Patricia N. Syverson*
Patricia N. Syverson (203111)
BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
Telephone: (619) 756-7748