UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**     The Court GRANTS IN PART and DENIES IN PART the motion to dismiss

    Before the Court is Defendants Whole Foods Market California, Inc. ("WFM CA"), Whole Foods Market Services, Inc. ("WFM Services"), Allegro Coffee Company ("Allegro"), and Mrs. Gooch's Natural Foods Markets, Inc.'s ("Mrs. Gooch's") (collectively, "Defendants") motion to dismiss the second amended complaint ("SAC"). *See* Dkt. # 35 ("*Mot.*"). Plaintiff David Berke ("Plaintiff") opposed. *See* Dkt. # 53 ("*Opp.*"). Defendants replied. *See* Dkt. # 55 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving, opposing, and reply papers, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

I.    Background

    This putative consumer class action alleges that WFM CA, WFM Services, Allegro, and Mrs. Gooch's made false and misleading representations relating to the manufacture, marketing and sale of the Whole Foods' brand of bottled water, Starkey Water. *See Second Amended Complaint*, Dkt. # 33 ("*SAC*"), ¶¶ 1–6. Whole Foods, a nationwide grocery chain, has "promised consumers for decades," that it maintains "the strictest quality standards in the industry," adheres to "[s]tandards that aren't standard anywhere else," that "Quality is a state of mind at Whole Foods Market," that "We Sell The Highest Quality Natural and Organic Foods," and its corporate slogan is "America's Healthiest Grocery Store." *See id.* ¶¶ 1, 22–23. Plaintiff claims he believed he was purchasing "bottled water of the highest quality, safety and purity" based on Whole Foods Market's general "reputation and long-running media campaign for sourcing and selling safe, wholesome and healthy products." *See id.* ¶¶ 1–2, 18, 22–23. In addition, Starkey Water's label states that "its purity has been protected for 11,000 years," and product descriptions from websites describe Starkey Water as "Protected, Pure, Unique," "pure," "pristine," "pure filtered," and "Untouched by surface contamination," "some of the purest and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

most pristine water available in the U.S.," and the label does not mention arsenic in its contents disclosure. *See id.* ¶¶ 2, 6 7, 20, 23.

In fact, Starkey Water allegedly contains some of the highest levels of arsenic among bottled waters: 2019 independent testing by *Consumer Reports* and Center for Environmental Health has shown high levels of arsenic (with one bottle exceeding the federal limit of 10 ppb of arsenic), and Starkey Water was recalled due to arsenic contamination in 2016 and 2017, although Whole Foods claims it has conducted its own tests and found the water to contain less than 10 ppb of arsenic. *See id.* ¶¶ 2, 4, 34. Over 120 competing bottled water brands contain no discernible arsenic, or very low levels; and Starkey Water is the "most arsenic-laden bottled water product currently on the market." *See id.* ¶¶ 4 5, 36. Arsenic is a metalloid chemical and known carcinogen that can lead to various health problems. *See id.* ¶¶ 2, 26 33. Plaintiff alleges that if he and others like him knew Starkey Water contained "arsenic in much higher amounts than other commercially available brands, they would not have purchased it, and certainly would not have paid a premium for it." *See id.* ¶ 5. Plaintiff purchased Starkey Water from a store during the Class Period, and in doing so "relied on Whole Foods' reputation and long-running multi-media campaign for sourcing and selling safe, wholesome, and healthy products." *See id.* ¶¶ 3, 5, 18.

Defendant WFM CA operates Whole Foods retail stores in California, as does Mrs. Gooch's. *See id.* ¶¶ 11, 14. Allegro markets, distributes, and/or sells Starkey Water in California. *See id.* ¶ 13. WFM Services owns and operates Whole Foods' website. *See id.* ¶ 12.

Plaintiff filed suit in this Court on August 28, 2019. *See Complaint*, Dkt. # 1. Plaintiff twice amended his complaint, and brings the following causes of action:

<u>First Cause of Action</u>: Violation of California Business & Professions Code §§ 17200, et seq. *SAC* ¶¶ 48 61.

<u>Second Cause of Action</u>: Violations of the Consumers Legal Remedies Act ("CLRA") Cal. Civ. Code §§ 1750 et seq. *Id.* ¶¶ 62 69.

Plaintiff brings these claims on behalf of himself and a class of "[a]ll citizens of the Multi-State Class states who, within the applicable statute of limitations period until the date notice is disseminated, purchased Starkey Water at Whole Foods in California, Florida, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington," or in the alternative, "[a]ll California citizens who, within the applicable statute of limitations period

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

until the date notice is disseminated, purchased Starkey Water at Whole Foods in California." *Id.* ¶ 38.

Defendants move to dismiss the SAC, arguing that personal jurisdiction is lacking over WFM Services, that Plaintiff lacks standing, that Plaintiff's claims are preempted, and that Plaintiff has failed to plead plausible claims for relief. *See generally Mot.*

II. Legal Standard

A. Rule 12(b)(1)

Federal courts have limited jurisdiction and therefore only possess power authorized by Article III of the United States Constitution and statutes enacted by Congress. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Thus, federal courts cannot consider claims for which they lack subject matter jurisdiction. *See Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992).

Federal Rule of Civil Procedure 12(b)(1) provides for a party, by motion, to assert the defense of "lack of subject-matter jurisdiction." This defense may be raised at any time, and the Court is obligated to address the issue sua sponte. *See* Fed. R. Civ. P. 12(h)(1) (providing for waiver of certain defenses but excluding lack of subject matter jurisdiction); *Grupo Dataflux v. Atlas Global Grp.*, 541 U.S. 567, 571 (2004) ("Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment."); *Moore v. Maricopa Cty. Sheriff's Office*, 657 F.3d 890, 894 (9th Cir. 2011) ("The Court is obligated to determine *sua sponte* whether it has subject matter jurisdiction."). The plaintiff bears the burden of establishing that subject matter jurisdiction exists. *See United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1157 (9th Cir. 2010). If the Court finds that it lacks subject matter jurisdiction at any time, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the challenging party asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *See id.*

B. Standing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

A plaintiff must "have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). The "irreducible constitutional minimum" of Article III standing has three elements: (1) "the plaintiff must have suffered an injury in fact an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 61 (1992) (internal quotation marks omitted). The plaintiff, as the party invoking federal jurisdiction, has the burden of establishing these elements. *See id.* at 561. Article III standing bears on the court's subject matter jurisdiction and is therefore subject to challenge under Federal Rule of Civil Procedure 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

C. <u>Rule 12(b)(2)</u>

Federal Rule 12(b)(2) provides that a defendant may move to dismiss an action for lack of personal jurisdiction. In exercising personal jurisdiction over nonresident defendants, California courts need only consider federal due process requirements because California's jurisdictional statute is coextensive with federal law. *See* Cal. Civ. Proc. Code § 410.10; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 01 (9th Cir. 2004); *Data Disc, Inc. v. Systems Tech. Assocs.*, 557 F.2d 1280, 1286 (9th Cir. 1977). Due process requires that nonresident defendants possess "certain minimum contacts with [the forum state] such that [maintaining] the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations and quotation marks omitted). Depending on the extent of the defendant's contacts, the forum state may exercise either general or specific personal jurisdiction. *See Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).

Where, as here, the motion to dismiss is based on pleadings and affidavits, and not an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *See Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127 28 (9th Cir. 1995). Once a defendant challenges personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Uncontroverted allegations in the complaint must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

D. <u>Rule 12(b)(6)</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). The allegations "must set forth more than neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud. Where multiple defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Rather, a plaintiff must identify each defendant's role in the alleged scheme. *See id.* at 765.

III.     Discussion

Defendants make the following arguments: (1) WFM Services is not subject to this Court's personal jurisdiction and should be dismissed; (2) Plaintiff lacks Article III standing because he fails to allege an injury in fact; (3) Plaintiff's claims are preempted; and (4) Plaintiff has failed to plead sufficient facts to support his claims.

The Court takes the arguments in turn. First, the Court turns to whether there is personal jurisdiction over WFM Services. The Court next turns to Defendants' arguments that Plaintiff fails to allege an injury in fact and that Plaintiff's claims are preempted. Finally, the Court turns to whether Plaintiff's claims are inadequately pleaded.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

A. <u>Personal Jurisdiction Over WFM Services</u>

Plaintiff does not dispute that the Court lacks general jurisdiction over WFM Services. *See generally Opp.*; *Mot.* 6–7; *Declaration of Timothy Horn*, Dkt. # 37 ("*Horn Decl.*"), ¶¶ 2, 6–7. Rather, the parties dispute whether the Court has specific jurisdiction over WFM Services.

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Ninth Circuit uses a three-part test to determine whether specific jurisdiction exists:

i. The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

ii. the [plaintiff's] claim must be one which arises out of or relates to the defendant's forum-related activities; and

iii. the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of establishing the first two prongs, but if both are established, the burden shifts to the defendant to present a compelling case as to why exercising jurisdiction would be unreasonable. *See id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

The first prong of the specific jurisdiction analysis embodies two distinct concepts: purposeful availment and purposeful direction. *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Purposeful availment is most often used in contract suits, and purposeful direction is most often used in tort suits. *Schwarzenegger*, 374 F.3d at 802. Courts in this District apply a purposeful-direction analysis when considering product false-labeling claims because such claims sound primarily in tort. *See, e.g.*, *Podobedov v. Living Essentials, LLC*, No. CV 11-6408 PSG (PLAx), 2012 WL 2513465, at *3 (C.D. Cal. Mar. 22, 2012) (applying purposeful-direction analysis to claims that "5-Hour Energy" beverages do not in fact provide five hours of energy). Because Plaintiff asserts claims sounding in tort, the purposeful

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

direction test is applicable here. Ninth Circuit courts use the "effects test" from the Supreme Court's opinion in *Calder v. Jones*, 465 U.S. 783 (1984) to evaluate minimum contacts in the purposeful direction context. *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998). The elements of this minimum contacts test are: the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015).

Defendants dispute that Plaintiff has established the first prong — that WFM Services' activities were "expressly aimed" at the forum state — and the second prong — that Plaintiff's claims "arise out of" WFM Services' forum-related contacts. *See Mot.* 6–8. The Court turns to the second prong of the specific jurisdiction analysis, and finding it dispositive, does not address the other prongs. Under the second prong, the plaintiff's claims must "arise out of" or "relate to" the defendant's forum-related activities. In other words, contacts with a forum state are relevant for purposes of specific jurisdiction only if they are sufficiently related to the cause of action; here, they are not.

WFM Services works as the administrative arm of the Whole Foods Market family of companies, providing accounting, legal and other administrative services to the various Whole Foods Market operating entities. *See Horn Decl.* ¶ 3. WFM Services is responsible for the development and execution of Whole Foods Market's national brand campaign, which includes various brand advertisements, primarily on television commercials and with some billboard advertising.[1] *See Declaration of Laurence D. Paskowitz*, Dkt. # 53-1 ("*Paskowitz Decl.*"), ¶ 2, Ex. A, ¶¶ 9.a–9.b. This campaign focuses on Whole Foods Market as a brand. *See id.* ¶¶ 9.c–9.e. The campaign has used the tag lines "America's Healthiest Grocery Store" and "Values Matter" and "the highest standards weren't available, so we created them." *See id.* ¶ 9.h. WFM Services is also responsible for the content and design of the Whole Foods market website ("WFM website"), which includes a webpage discussing the Whole Foods market quality

---

[1] Plaintiff requests that the Court take judicial notice of various excerpts of the WFM website. *See Request for Judicial Notice*, Dkt. # 54 ("*RJN*"). Under Federal Rule of Evidence 201, a court may take judicial notice of facts not subject to reasonable dispute because they (1) are generally known within the court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). "Courts have taken notice of defendants' websites or characteristics thereof when determining personal jurisdiction." *W. Marine, Inc. v. Watercraft Superstore, Inc.*, 2012 WL 479677, at *10 (N.D. Cal. Feb. 14, 2012) (collecting cases). Defendants have not opposed this request. Accordingly, the Court concludes taking notice is proper here, and **GRANTS** Plaintiff's request for judicial notice.

Case 2:19-cv-07471-PSG-KS   Document 57   Filed 09/18/20   Page 8 of 20   Page ID #:410

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

standards and includes a page displaying Starkey Water. *See id.* ¶¶ 9.i 9.l; *Paskowitz Decl.*, Ex. B. For instance, the WFM website uses the phrase "the strictest quality standards in the industry." *See id.* WFM Services does not manufacture, distribute or sell Starkey Water, which is not a Whole Foods private label product. *See Horn Decl.* ¶ 9. WFM Services is not involved in and does not control decisions relating to the nation-wide design, development, advertising or marketing of Starkey Water, nor does WFM Services design Starkey Water's labeling. *See id.* ¶ 10.

In determining whether a plaintiff's claims arise out of the defendant's local conduct, "the Ninth Circuit follows the 'but for' test." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001) (citation omitted). "Hence, [p]laintiffs must show that they would not have suffered an injury 'but for' [the defendant's] forum related conduct." *Id.* If Plaintiff's claims would have arisen notwithstanding certain contacts, those contacts are not relevant to the jurisdictional analysis. *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

Here, Plaintiff relies on WFM Services' alleged misstatements in various Whole Foods national brand campaign ads and on the WFM website to demonstrate that WFM Services expressly aimed at California. Plaintiff contends that he was "injured by the Whole Foods National Brand Campaign [which WFM Services is responsible for, which is] aimed at consumers nationwide, using digital media, national TV, and radio outlets" that conveyed messages about WFM's standards. *See Opp.* 9:2 7. Plaintiff alleges that his claims against WFM Services would not exist "but for" its acts in promoting WFM's brand. *See id.* 9:12 17. Defendants argue that Plaintiff has not demonstrated that his claim "arises out of" WFM Services' conduct. The Court agrees with Defendants.

First, as to the WFM website, Plaintiff has not alleged, nor provided any evidence, that he accessed, used or viewed the WFM website before purchasing the Starkey Water product. *See generally SAC*; *Opp.* Nor has Plaintiff alleged or provided any evidence that he accessed or viewed any of the brand campaign advertisements that WFM Services was allegedly responsible for prior to purchasing the product, beyond the allegation that he "relied on Whole Foods' reputation and long-running multi-media campaign." *See generally SAC*; *Opp.*; *Paskowitz Decl.*, Ex. A ¶ 9.h. These facts distinguish *Kellman v. WFM Private Label*, on which Plaintiff relies, because in that case there was evidence that WFM Services was responsible for the allegedly misleading label on the Whole Foods private-label product and marketing of that specific product, which is not true here. *See Kellman v. WFM Private Label*, No. 17-cv-06584-LB, 2019 WL 1429576, at *8 (N.D. Cal. Mar. 29, 2019); *Paskowitz Decl.*, Ex. A; *SAC* ¶ 13 (alleging Allegro Coffee is responsible for Starkey Water's label and marketing). In addition, unlike in *Kellman* where the plaintiff submitted a declaration stating that she had "used the Whole Foods

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

website's online store locator to help her find the Whole Foods store nearest to her and to confirm the store's hours," Plaintiff has not submitted any evidence that he used or accessed the WFM website prior to purchasing the product. *See Kellman*, 2019 WL 1429576 at *8.

While the Ninth Circuit's "but for" test of relatedness is "broader than those adopted by certain other circuits," nonetheless, "'but for contacts' still must have some degree of proximate causation to be considered for purposes of jurisdiction." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1085 (C.D. Cal. 2003) (citing *Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1051 52 (9th Cir. 1997)). Here, absent allegations or evidence demonstrating that Plaintiff viewed or relied on national advertisements or accessed the WFM website WFM Services' contacts that were allegedly aimed at the forum state prior to his purchase, Plaintiff has not established a prima facie case that these contacts are the "but for" cause of his injury.

The Court concludes that Plaintiff has not met its burden of establishing personal jurisdiction over WFM Services at this time. Accordingly, the Court **GRANTS** Defendants' motion to dismiss WFM Services for lack of personal jurisdiction.

B. Article III Standing

Defendants next argue that Plaintiff has failed to allege an injury in fact for Article III standing purposes. *See generally Mot.*

Plaintiff argues that he has alleged an economic injury. *See Opp.* 10:9 16; *SAC* ¶ 5. To allege an "economic" injury for Article III standing purposes, the Ninth Circuit has held that where a plaintiff "'contend[s] that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so' they have suffered an Article III injury in fact." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012)); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011). An injury in fact is alleged where a plaintiff "asserts that he purchased [products] that he otherwise would not have purchased in absence of the alleged misrepresentations" about the product. *Chavez v. Blue Sky Nat. Beverage Co.*, 340 F. App'x 359, 361 (9th Cir. 2009); *see also Azimpour v. Sears, Roebuck & Co.*, No. 15-CV-2798 JLS (WVG), 2016 WL 7626188, at *3 (S.D. Cal. Oct. 17, 2016).

Plaintiff's SAC alleges that Starkey Water is falsely and misleadingly labeled as "pure," among other things, *see SAC* ¶¶ 1 2, 5 7, 22 26, that this is misleading because Starkey Water in fact has more arsenic than other bottled water brands and is "the most arsenic-laden bottled

Case 2:19-cv-07471-PSG-KS Document 57 Filed 09/18/20 Page 10 of 20 Page ID #:412

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

water product currently on the market," *see id.* ¶¶ 4–5, and that he purchased and paid a premium for Starkey Water and had he known the truth he would not have purchased Starkey Water or paid a premium for it, *see id.* ¶¶ 5, 18. Thus, Plaintiff has alleged that he purchased Starkey Water, which he otherwise would not have purchased or paid a premium for absent the alleged misrepresentations about the product. *See Chavez*, 340 F. App'x at 361.

Defendants argue that the SAC's allegations are insufficient for two reasons: (1) Plaintiff has not alleged that he purchased Starkey Water containing arsenic at a level approaching or slightly above the 10-ppb limit allowed by the FDA, and thus has not alleged an injury affecting him in a personal and individual way; and (2) the SAC alleges a "no-injury" product defect case masquerading as a consumer fraud suit. *See Mot.* 9:8–12. The Court rejects each argument in turn.

First, Defendants argue that because there is no allegation as to how much arsenic was in the Starkey Water that Plaintiff *himself bought*, his alleged injury is speculative. *See Mot.* 9 (citing *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030–31 (8th Cir. 2014); *Gaminde v. Lang Pharma Nutrition, Inc.*, No. 1:18-cv-300 (GLS/DEP), 2019 WL 1338724, at *1 (N.D.N.Y. Mar. 25, 2019)). The Court disagrees. The SAC sufficiently alleges that Starkey Water in general contains *higher* levels of arsenic as compared with other bottled water on the market (even if all Starkey bottles do not contain arsenic above the federal limit). While there is some ambiguity in the pleadings as to the quality of each and every Starkey bottle, reading the allegations in the light most favorable to Plaintiff, the SAC has sufficiently alleged that all Starkey Water had comparatively high arsenic content to other bottles on the market, and Plaintiff would not have purchased or paid a premium for the product if he had known this. *See SAC* ¶¶ 2–4, 24–25, 34. Defendant's argument therefore fails at this stage based on the pleadings.

Second, the Court rejects Defendant's argument that this is a "product defect case masquerading as a consumer fraud suit." *See Mot.* 9:8–12. While plausible allegations that a plaintiff purchased a defective or unsafe product are sufficient to make out an economic injury, *see In re Mattel, Inc., Toy Lead Paint Prods. Liability Litig.*, 588 F. Supp. 2d 1111, 1117 (C.D. Cal. 2008), courts have held that where the complaint does not plausibly allege that a product is unsafe, its purchase may not constitute an economic injury. For instance, in *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), the plaintiffs alleged that Apple violated the UCL by selling iPods that were capable of producing dangerous volume levels and thus causing hearing loss. *Id.* at 957. The Ninth Circuit concluded that the plaintiffs failed to show a particularized and actual injury sufficient for standing under the UCL—despite the plaintiffs' argument that the risk of hearing loss diminished the value of the iPods—in part because "the alleged loss in value . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

rests on a hypothetical risk of hearing loss to other consumers who may or may not choose to use their iPods in a risky manner," and the plaintiffs did "not claim that they, or anyone else, have suffered or [were] substantially certain to suffer hearing loss from using an iPod." *Id.* at 959 62; *see also Boysen v. Walgreen Co.*, No. C 11-06262 SI, 2012 WL 2953069, at *1 (N.D. Cal. July 19, 2012); *Meaunrit v. The Pinnacle Foods Grp., LLC*, No. C 09-04555 CW, 2010 WL 1838715, at *1 (N.D. Cal. May 5, 2010).

However, courts in this Circuit have distinguished these cases from those where the allegations at issue rely on false or misleading advertising. For instance, the Ninth Circuit subsequently explained that in *Birdsong*, the plaintiffs "did not allege economic harm from having purchased headphones in reliance on false advertising, but rather claimed that the inherent risk of the headphones reduced the value of their purchase and deprived plaintiffs of the benefit of their bargain." *Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 840 (9th Cir. 2011), *vacated*, 699 F.3d 1103 (9th Cir. 2012); *see also Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 662 (N.D. Cal. 2016), *aff'd*, 730 F. App'x 460 (9th Cir. 2018) (distinguishing *Birdsong*, 590 F.3d at 957 62); *Samet v. Procter & Gamble Co.*, No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *3 (N.D. Cal. June 18, 2013) (distinguishing *Boysen* on the ground that the *Boysen* court based its "decision on the fact that the plaintiff did 'not allege that had defendant's juice been differently labeled, he would have purchased an alternative juice.'").

While Defendants argue that Plaintiff's standing allegations rely on the argument that Starkey Water is unsafe, looking to the SAC's allegations as a whole, that is not Plaintiff's theory. *See Reply* 5:20 22. Rather, the SAC focuses on Defendants' allegedly misleading advertising and labeling. Plaintiff alleges that high arsenic in general is distasteful, that Starkey Water products contained relatively higher amounts of arsenic than other bottled water, and that misleading statements including those on the label induced him to purchase a product he would not otherwise have purchased or paid the premium that he did. Accepting these factual allegations as true for purposes of a motion to dismiss, Plaintiff has alleged he spent money he otherwise would have saved but for Defendants' acts of unfair competition. Numerous courts in this circuit have found such allegations sufficient to establish an economic injury. *See Samet*, 2013 WL 3124647, at *3 (collecting cases); *Kosta v. Del Monte Corp.*, 12 CV 01722 Y GR, 2013 WL 2147413, at *11 12 (N.D. Cal. May 15, 2013); *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 961 62 (N.D. Cal. 2013); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 901 (N.D. Cal. 2012).

  C.  Express Preemption

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

Next, Defendants argue that the SAC's allegations that the omission of arsenic on the label is misleading and that demand a label warning regarding arsenic seek to impose requirements on Defendants not identical to the relevant federal standards and are expressly preempted. *See Mot.* 16:11 19:12. The SAC alleges in part that Whole Foods' "failure to disclose arsenic among the identified contents on the label is a material misleading omission" because arsenic is "a poison that in large doses kills and in small doses can cause cancer and a number of other serious health problems." *SAC* ¶¶ 26 30, 50.

The Food and Drug Administration ("FDA") under the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 et seq., as amended by the Nutritional Labeling and Education Act ("NLEA"), has promulgated regulations with respect to food labels. *See* 21 C.F.R. §§ 101.1 et seq. Many of the subsections of 21 U.S.C. § 343 establish the conditions under which food is "deemed to be misbranded." *See Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1310 (E.D. Cal. 2014) (providing overview of statutory scheme). For example, under 21 U.S.C. § 343(a)(1), food is misbranded if "its labeling is false or misleading in any particular." Sections 343(q) and (r) regulate "nutrition information" and "nutrient content" claims.

Starkey Water is labeled and sold as bottled "spring water." *SAC* ¶ 6. The FDA under the NLEA regulates "spring water" as bottled water and has set a standard of identity. *See* 21 C.F.R. 165.110(a)(2)(iv) (defining "spring water" as derived from an underground formation from which water flows naturally to the surface). The federal standards applicable to bottled water set an upper limit of 10 ppb for arsenic and establish that "[a]rsenic shall be measured" using one of two testing methods. *See* 21 C.F.R. § 165.110(b)(4)(iii)(A) (arsenic not to exceed .010 milligrams per liter, i.e., 10 ppb).

There are three different types of preemption, "conflict," "express," and "field." *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018). Here, Defendants argue only express preemption applies. *See generally Mot.* "Express preemption exists when a statute explicitly addresses preemption." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). The NLEA contains an express preemption provision: it provides that no State "may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement respecting any claim of the type described in section 343(r)(1) of this title, made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title." 21 U.S.C. § 343-1(a)(5); *see also Lilly v. ConAgra*, 743 F.3d 662, 665 (9th Cir. 2014); 21 C.F.R. § 100.1(c)(4). Under this provision, "states are not allowed to adopt food labeling requirements governed by the NLEA that are different from or additional to those required by the FDCA. The NLEA is clear, however, that if state law seeks to impose

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

liability consistent with the FDCA, the law is not preempted." *See Salazar*, 74 F. Supp. 3d at 1311.

The Ninth Circuit has explained that the FDCA might not preempt consumer claims where a consumer asserts deception as a result of a misleading advertisement. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 758 (9th Cir. 2015). In *Astiana*, the plaintiffs filed a putative class action claiming they were deceived into purchasing cosmetics that were labeled "All Natural," "Pure," or "Pure, Natural & Organic," but the products contained synthetic ingredients. *See id.* at 756. As the court explained:

> [The plaintiff] is not asking Hain to modify or enhance any aspect of its cosmetics labels that are required by federal law. Rather, she claims deception as a result of advertising statements that contradicted the true ingredients listed on the FDA-mandated label. FDA regulations do not require Hain to label its products as "All Natural" or "Pure Natural." If [the plaintiff's] suit ultimately requires Hain to remove these allegedly misleading advertising statements from its product labels, such a result does not run afoul of the FDCA, which prohibits "requirement[s]" that are "different from," "in addition to," or "not identical with" federal rules.

*Id.* Consistent with this holding, courts have held that false advertising claims that rely on voluntary, positive statements about a product are not preempted. For example, in *Tran v. Sioux Honey Ass'n Coop.*, the plaintiff claimed that product labels representing the honey product as "Pure" and "100% Pure" honey were misleading because they contained a synthetic chemical and herbicide glyphosate. No. 8:17-CV-110-JLS-JCGX, 2018 WL 10612686, at *4 (C.D. Cal. Aug. 20, 2018). The court held that although the federal rules did not require that the defendant note the presence of trace amounts of glyphosate in the product, the plaintiffs' claims were not challenging the defendant's "failure to disclose the presence of glyphosate in its honey," but rather the voluntary positive claims about purity. *See id.* The defendant could avoid consumer lawsuits without altering the product or disclosing the glyphosate, merely by ceasing its quality promises of "Pure," and thus there were no "federal requirements that would be impossible to comply with" should the plaintiff prevail. *See id.* As the court explained, "if the words 'Pure' and '100% Pure' are in fact misleading as to Sioux Honey's honey, then requiring their removal hardly impedes Congress' goals with respect to the FDCA. Under federal law, food is misbranded if 'its labeling is false or misleading in any particular.'" *Id.* (quoting 21 U.S.C. § 343(a)(1)); *see also Prescott v. Bayer HealthCare LLC*, No. 20-CV-00102-NC, 2020 WL 4430958, at *3 (N.D. Cal. July 31, 2020) (lawsuit challenging use of "mineral-based" on packaging not preempted by the FDCA); *Tabler v. Panera, LLC*, Case No, 19-cv-01646-LHK,

Case 2:19-cv-07471-PSG-KS   Document 57   Filed 09/18/20   Page 14 of 20   Page ID #:416

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

2019 WL 5579529, at *5 (N.D. Cal. Oct. 29, 2019) (lawsuit challenging use of "clean" or "100% clean" in food packaging not preempted by the FDCA).

In contrast, courts have found that challenges to false and misleading label statements are preempted where the plaintiff makes express claims, such as nutrient content claims, that are required or prohibited by federal regulation. *See Salazar*, 74 F. Supp. 3d at 1312 13 (claims that labels were false because they made express nutrient content claims about the amount of antioxidants in the product were preempted, where the complaint relied on tests to demonstrate the statements were false that did not comply with the FDA's testing methodology); *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1119 (C.D. Cal. 2010) (claims that labels were false because they made express nutrient content claim of "0 Grams of Trans Fat" preempted because plaintiff sought to enjoin the use of the term that was permitted by the NLEA); *cf. In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 529 (S.D.N.Y. 2008).

Defendants argue that Plaintiff's omission arguments are expressly preempted because federal standards "do not require that bottle water labels disclose or warn about the presence of arsenic at levels below the federal limit." *See Mot.* 18 19. Plaintiff responds that its claims are not preempted because Defendants have made voluntary statements about the quality of Starkey Water, relying on *Astiana* and *Tran*. Plaintiff does not respond to Defendants' specific argument about the SAC's allegations aimed at the failure to disclose the presence of arsenic on the water bottle labels; and instead contends that "Plaintiff is not seeking to require arsenic to be listed." *See Opp.* 18:10 11.

The Court concludes that, to the extent that the SAC has relied on an omission theory, Plaintiff's failure to respond to Defendants' arguments deem the issue conceded. *See, e.g.*, *Tapia v. Wells Fargo Bank, N.A.*, No. CV 15-03922 DDP (AJWX), 2015 WL 4650066, at *2 (C.D. Cal. Aug. 4, 2015); *Silva v. U.S. Bancorp*, No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011). However, to the extent that Plaintiff's claims rely on affirmative misleading or false statements, the Court concludes that they are not preempted. As in *Astiana* and *Tran*, to the extent that Plaintiff claims that Defendants' allegedly false quality claims, such as "purity," were misleading given the relatively high presence of arsenic in Starkey Water as compared with other water, this claim is not preempted. *See SAC* ¶¶ 1, 6, 22 23, 26. This is because Plaintiff's claim would not modify federal law requirements of spring water bottle labels, but would rather require the removal of positive quality claims, and Defendants have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

failed to point to any "federal requirements that would be impossible to comply with should the plaintiff prevail."[2] *See Tran*, 2018 WL 10612686, at *4; *Astiana*, 783 F.3d at 758.

### D. Plausible Claim

The following alleged misrepresentations are at issue in the SAC: (1) an advertising campaign in which Defendants made various general promises about quality relating to the Whole Foods brand; and (2) specific statements about Starkey Water on the WFM website and other websites, and the product's label. *See SAC* ¶¶ 1 2, 6 7, 20 23. Defendants argue: (1) the SAC fails to allege reliance on general brand statements; (2) Plaintiff's claims fail the reasonable consumer test; and (3) Plaintiff's claims are barred by the safe harbor. *See Mot.* 19 23. The Court takes these arguments in turn.

#### i. Reliance

Defendants first argue that Plaintiff has not sufficiently alleged reliance on Defendants' general brand reputation advertising. *See Mot.* 20 21; *Reply* 10. The Court agrees.

Under Federal Rule of Civil Procedure 9(b), when pleading fraud, a plaintiff must state a cause of action with particularity. The SAC alleged Defendant committed fraudulent acts, and generally refers to Defendant's false representations. Rule 9(b)'s heightened pleading requirement applies to Plaintiff's UCL and CLRA claims because these claims are based on Defendants' allegedly fraudulent course of conduct: their alleged misrepresentations. *See generally SAC*; *see also Vess v. CibaGeigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("[f]raud can be averred by specifically alleging fraud or by alleging facts that necessarily constitute fraud"); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have

---

[2] While Defendants assert that: "the descriptor 'purity' applies to Spring Water, a defined term under the federal regulations," and "[t]he product is pure spring water, which is why it may contain small amounts of naturally occurring arsenic," Defendants do not cite the Court to any FDA definition or specific regulation of purity in connection with Spring Water that would create a preemption issue. *See Reply* 9:10 13 (no citations). Rather, Plaintiff argues that the FDA in fact *discourages* the use of the word pure, as "pure may be confused with the term 'purified' and consumers may be misled into believing that bottled water labeled as 'pure' has been treated to substantially decrease the total dissolved solids content. The agency is not convinced that it should use its resources to define the term 'pure' at this time but will continue to discourage its use. In addition, the agency will continue to deal with this issue on a case-by-case basis." 60 FR 57076, 57099; *see also SAC* ¶ 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Haskins v. Symantec Corp.*, No. 13-CV-01834-JST, 2013 WL 6234610, at *3 (N.D. Cal. Dec. 2, 2013); *Tabler*, 2019 WL 5579529, at *11.

"[T]o maintain a claim under the FAL and CLRA, as well as under any UCL claim premised on fraud or misrepresentation, a plaintiff must plead facts showing that she relied on the defendant's alleged misrepresentation." *Davidson v. Kimberly Clark Corp.*, No. C 14 1783 PJH, 2014 WL 3919857, at *9 (N.D. Cal. Aug. 8, 2014); *see also Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310, 322 (2011). However, in the *Tobacco II* cases, the California Supreme Court explained that plaintiffs are not required "to plead or prove an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements when the unfair practice is a fraudulent advertising campaign," for instance, in *Tobacco II*, a long-term advertising campaign containing disinformation about the health effects of cigarette smoking. *In re Tobacco II Cases*, 46 Cal. 4th 298, 306, 328 (2009); *see also Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 456 57 (N.D. Cal. 2019). But *Tobacco II* "does not stand for the proposition that a consumer who was never exposed to an alleged false or misleading advertising or promotional campaign is entitled to restitution." *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 632 (2010); *see also In re 5 hour ENERGY Mktg. & Sales Prac. Litig.*, No. MDL 13 2438 PSG PLAX, 2014 WL 5311272, at *16 (C.D. Cal. Sept. 4, 2014). Courts have explained that a plaintiff "cannot rely on *Tobacco II* unless they have alleged an advertising campaign that is similarly extensive and lengthy." *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191, at *3 (N.D. Cal. Apr. 16, 2013).

Here, Plaintiff has not alleged that he viewed one, or any, of the general quality Whole Foods branding statements prior to purchasing Starkey Water, nor that he accessed the Whole Foods website prior to making his purchases. *See generally SAC*. Rather, the SAC simply states: "[i]n purchasing Starkey Water, [Plaintiff] relied on Whole Foods' reputation and long-running multi-media campaign for sourcing and selling safe, wholesome and healthy products." *See id.* ¶ 18. While Plaintiff's SAC references a number of Whole Foods general branding statements such as "America's Healthiest Grocery Store," "Quality is a state of mind at Whole Foods Market," and "Standards that aren't standard anywhere else," the context of the advertisements is unclear, and Plaintiff does not allege when he viewed them, or which statements Plaintiff found to be material in making his purchases. *See id.* ¶¶ 1, 23. This lack of information is insufficient to give Defendant the opportunity to "respond to the alleged misconduct." *See Kearns*, 567 F.3d at 1126; *see also Hall v. Sea World Entm't, Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *4 (S.D. Cal. Dec. 23, 2015); *Tabler*, 2019 WL 5579529, at *12 ("[T]his Court and other courts in this circuit have held that a plaintiff does not satisfy Rule 9(b) when the plaintiff generally identifies allegedly misleading statements but fails

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

to specify which statements the plaintiff actually saw and relied upon."); *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) (dismissing complaint under Rule 9(b) because the complaint identified "a range of statements" that were allegedly misleading, but plaintiffs did not specify "which statements any of them saw or relied on in deciding to buy" products from the defendant).

Plaintiff argues that his reliance on Whole Foods' general brand advertising falls within the *Tobacco II* exception because he has alleged that Whole Foods' marketing campaign is "decades-long." *See SAC* ¶ 1; *Opp.* 19 20. While Plaintiff has made a conclusory allegation about the lengthiness of Whole Foods' marketing, he has not sufficiently alleged facts that would plead the "longevity" and "pervasiveness" of specific, sustained marketing similar to the advertising in *Tobacco II*. *See Tabler*, 2019 WL 5579529, at *13; *Hall*, 2015 WL 9659911, at *4 ("If the vague and conclusory allegations of an advertising campaign in the FAC were sufficient, whatever exception that may have been created by *Tobacco II* would swallow the well-settled rule that fraud plaintiffs must plead reliance with particularity."); *Bronson*, 2013 WL 1629191, at *3. Plaintiff has not sufficiently alleged facts for *Tobacco II* to apply.

Finally, the Court notes that Defendants do not contest that Plaintiff has adequately alleged exposure to and reliance on various representations made on the Starkey Water label. *See Opp.* 20:17 26; *see generally Reply*.[3]

    ii.    *Reasonable Consumer*

The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). The CLRA likewise prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. To state a claim for false or misleading advertising under these statutes, the standard to be applied is the "reasonable consumer" test, in other words, whether "members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)); *see also Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).

---

[3] In reply, Defendants raise a number of additional arguments, including that some of the general branding statements are non-actionable "puffery." *See Reply* 11 12. However, because these arguments were raised for the first time in reply, Plaintiff did not have an opportunity to respond to them, and accordingly the Court does not consider them. *See Telesign Corp. v. Twilio, Inc.*, No. CV 15-3240 PSG (SSx), 2015 WL 12662344, at *1 (C.D. Cal. Oct. 9, 2015) ("[A] court does not need to consider facts or arguments raised for the first time in a reply brief.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

These laws prohibit "not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams*, 552 F.3d at 938.

Defendants argue that "a reasonable consumer could not expect Starkey Water to contain zero arsenic" because arsenic is naturally occurring, and thus no consumer could reasonably rely on the alleged misstatements. *See Mot.* 21:25–22:10. The question of whether a business practice is deceptive generally presents a question of fact not suited for resolution on a motion to dismiss. *Williams*, 552 F.3d at 938. However, in rare circumstances, a "court may be in a position to consider the viability of the alleged consumer law claims based on its review of the product packaging." *Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (finding that packaging for Cap'n Crunch cereal was not misleading as a matter of law in its use of the phrase "Crunch Berries," because members of the public were not likely to be deceived into believing that it derives nutrition from actual fruit); *Videtto v. Kellogg USA*, No. 2:08–cv–01324–MCE–DAD, 2009 WL 1439086, at *2 (E.D. Cal., May 21, 2009) (dismissing UCL, FAL and CLRA claims based on allegations that consumers were misled into believing that "Froot Loops" cereal contained "real, nutritious fruit").

Here, at the motion to dismiss stage, the Court finds it is not so clear that a reasonable consumer would understand assertions that Starkey Water's "purity has been protected" or statements that it is "pure" or "pristine" as Defendants contend they would. *See, e.g.*, *Tran*, 2018 WL 10612686, at *5 (refusing to conclude that a reasonable consumer would understand "Pure" to mean that "trace amounts of pesticide could end up in their honey from the bees' interaction with the modern world," as opposed to meaning "that the final product does not contain any substance (even in trace amounts) that is not essential to the honey, particularly synthetic substances"); *SAC* ¶ 7 (explaining why "pure" may be misleading and that the FDA discourages its use).

        iii.     Safe Harbor

Finally, Defendants argue that Plaintiff may not bring UCL claims because of the federal regulations establishing maximum arsenic levels. *See Mot.* 22:11–23:12.

"If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999); *see also Alvarez v. Chevron Corp.*, 656 F.3d 925, 933–34 (9th Cir. 2011) (holding that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

safe harbor rule applies to CLRA claims). The court explained, however, "[t]he rule does not . . . prohibit an action under the unfair competition law merely because some other statute on the subject does not, itself, provide for the action or prohibit the challenged conduct." *Cal-Tech*, 20 Cal. 4th at 182. Rather, "[t]o forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct." *Id.* In other words, "[a]cts that the Legislature has determined to be lawful may not form the basis for an action under the unfair competition law, but acts may, if otherwise unfair, be challenged under the unfair competition law even if the Legislature failed to proscribe them in some other provision." *Id.* at 183.

Defendants argue that because the FDA has set regulations for labeling of bottled water, and the FDA has established the allowable level of arsenic that is permissible in bottled water, 10 ppb, the safe harbor bars Plaintiff's claims. *See Mot.* 23; 21 C.F.R. § 165.110(b)(4)(iii)(A). As noted above, however, Plaintiff does not claim that the product is mislabeled; but rather that affirmative representations about the product are false and misleading because it contains relatively high levels of arsenic. Defendants have not pointed to any state or federal law that requires the use of the affirmative representations or permits the use of those words where bottled water contains arsenic. *See generally Mot.*; *cf. Tran*, 2018 WL 10612686 at *4.

       *iv.    Summary*

In sum, the Court concludes that Plaintiff has not sufficiently alleged reliance on the national brand advertisements. The Court therefore **GRANTS** the motion to dismiss and **DISMISSES** the first and second causes of action to the extent they rely on those statements. The Court otherwise **DENIES** the motion to dismiss the first and second causes of action.

IV.    <u>Leave to Amend</u>

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-7471 PSG (KSx) | Date | September 18, 2020 |
|---|---|---|---|
| Title | Berke et al v. Whole Foods Market, Inc. et al. | | |

The Court has concluded that some of the allegations are not sufficiently pleaded. However, the Court cannot conclude at this early stage of the proceedings that any amendment would be futile. Accordingly, the Court **GRANTS** leave to amend.

V.   Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss as follows:

•   The Court **GRANTS** Defendants' motion to dismiss WFM Services for lack of personal jurisdiction.

•   The Court **GRANTS** Defendants' motion to dismiss the first and second causes of action on preemption grounds to the extent they rely on omission of arsenic. The Court **DENIES** the motion to the extent they rely on affirmative quality claims.

•   The Court **GRANTS** Defendants' motion to dismiss the first and second causes of action to the extent they relate to national advertising. The Court **DENIES** the motion to the extent they relate to product labeling.

The Court **GRANTS** leave to amend. Any amended complaint must be filed no later than **October 16, 2020**, or those claims that are dismissed will be dismissed with prejudice. If the complaint is not amended, the case will proceed as outlined above.

**IT IS SO ORDERED**.